12 June 2002
200.JDB.02-0008

Department of the Air Force
HQ SSG/PKZ-2
501 East Moore Drive
Building 884
Maxwell AFB-Gunter Annex, AL 36114-3004

Attention: Mr. Harry Bryan
Contracting Officer

Subject: Certified Claim

Reference: (a) Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613)

(b) Contract No. F01620-94-D-0002, Delivery Order 5981 issued October 20, 1999 incorporating by reference Leasing Terms and Conditions contained in I-CASE Special Offer #330, Revision 3

(c) Contract No. F01620-94-D-0002, Delivery Order 6022 issued December 3, 1999

Dear Mr. Bryan,

In accordance with the reference (a) Disputes Act, Northrop Grumman Computing Systems, Inc., formerly Logicon, Inc., ("claimant") hereby submits this certified claim in the amount of $570,000 plus applicable interest and requests resolution of the claim, in writing, in accordance with FAR 52.233-1 (d)(1).

Claimant is the government contractor and seeks payment for leased software for which the U.S. Army CECOM organization signed the reference (b) delivery order to acquire software. The lease was to cover the base year and three option years with payments of $100,000 (year 1) and $285,000 per year in three subsequent years.

The U.S. Army CECOM signed an Essential Use letter certifying the software was essential to the organization's operations. The Leasing Terms and Conditions, which were incorporated by reference and central to governing the lease transaction required the government to exercise renewal options, subject only to non-appropriation of funding. Additionally, the government represented and warranted to the contractor that it would, indeed, use its "best efforts" to annually obtain appropriated funds to support the full term of the lease.

The government made the $100,000 Base payment, as well as the first $285,000 payment, authorized by the reference (c) delivery order. However, the final two payments were never made. The government did not issue a notice citing non-renewal for non-appropriation of funds nor did it terminate for convenience. Furthermore, no explanation has been provided to claimant, verbally or in writing, for any of the government's actions.

The government is in breach of contract for the following reasons:

1. The only circumstance justifying failure to renew the lease, under the contract, is non-appropriation of funds - Please see Government Systems Advisors, Inc. v. United States, 21 Cl. Ct. 400 (1990). In the instant case, it is apparent that non Appropriation of funding was not the reason for the government's action. The government has provided no evidence that it sought, and was denied by Congress, funds to renew the lease.
2. Under item 10 of the Lease Terms and Conditions, the government is obligated, in the case of non-renewal, within thirty (30) days, to (1) cease using the asset; (2) remove the asset from its computers; and (3) certify to the contractor that use has been discontinued and all copies of the asset have been returned to the contractor or destroyed. The government has failed to comply with the foregoing material provisions of the lease agreement..
3. By signing the Essential Use letter the government made a false statement to the contractor. The contractor fully relied on this warranty to its detriment and committed financially to a lending partner to induce the third party lending source to finance the lease; thereby, allowing the contractor to pay the software publisher for the software and to deliver the software for unimpeded use by the government. The government's misrepresentation regarding the essential need of the software has had a significant financial impact on both the contractor and its lending partner.
4. The statement that the software was "integral to the user's system" as the government stated in the Essential Use letter, cannot be reconciled with the failure to renew the lease, given that the software was accepted and two of the four payments were made, thus certifying the software's conformity to the order. Please note that the software was unconditionally accepted under DD250 document dated November 3, 1999.
5. The government has failed to use its best efforts to annually budget and allocate appropriated funds to support the lease payments.

Accordingly, claimant requests that the contracting officer grant this claim in full and add interest in accordance with FAR 52.233-1(e).

Should you have any questions please address them to Mr. Jeffrey C. Nolan at (703) 312-2003 or the undersigned at (310) 831-0611 ext. 2826.

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

/s/
John del Bando
Contracts Manager

12 June, 2002
Date

 000284

NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC.

March 14, 2005
200.JDB.02-0008

Department of the Air Force
HQ SSG/PKZ-2
501 East Moore Drive
Building 884
Maxwell AFB-Gunter Annex, AL 36114-3004

Attention: Mr. Harry Bryan
Contracting Officer

Subject: Certified Claim

Reference: (a) Contract Disputes Act of 1978, as amended (41 USC. 601-613)

(b) Contract No. F01620-94-D-0002, Delivery Order 5981 issued October 20, 1999 incorporating by reference Leasing Terms and Conditions contained in I-CASE Special Offer #330, Revision 3

(c) Contract No. F01620-94-D-0002, Delivery Order 6022 issued December 3, 1999

Dear Mr. Bryan,

In accordance with the reference (a) Disputes Act, Northrop Grumman Information Technology, Inc., a Delaware corporation, formerly Logicon, Inc., ("claimant") hereby submits this certified claim in the amount of $570,000 plus applicable interest and requests resolution of the claim, in writing, in accordance with FAR 52.233-1 (d)(1).

Claimant is the government contractor and seeks payment for leased software for which the U.S. Army CECOM organization signed the reference (b) delivery order to acquire software. The lease was to cover the base year and three option years with payments of $100,000 (year 1) and $285,000 per year in three subsequent years.

The U.S. Army CECOM signed an Essential Use letter certifying the software was essential to the organization's operations. This letter was incorporated by reference in the contract as a warranty by the government to the contractor. The Leasing Terms and Conditions, which were incorporated by reference and central to governing the lease transaction required the government to exercise renewal options subject only to non-appropriation of funding. Additionally, the government represented and warranted to the contractor that it would, indeed, use its "best efforts" to annually obtain appropriated funds to support the full term of the lease.

The government made the $100,000 Base payment, as well as the first $285,000 payment, authorized by the reference (c) delivery order. However, the final two payments were never made. The government did not issue a notice citing non-renewal for non-appropriation of funds nor did it terminate for convenience. Furthermore, no explanation has been provided to claimant, verbally or in writing, for any of the government's actions.

The government is in breach of contract for the following reasons:

1. The only circumstance justifying failure to renew the lease, under the contract, is non-appropriation of funds or lack of bona fide needs. However, this right only exists if the government's need is not fulfilled in the 12 months after non-renewal with an asset performing similar functions which the software was to perform. In fact, the government did meet its needs with assets performing similar functions and violated the contract. In the instant case, it is apparent that non-appropriation of funding was not the reason for the government's action. The government has provided no evidence that it sought, and was denied by Congress, funds to renew the lease.
2. Under item 10 of the Lease Terms and Conditions, the government is obligated, in the case of non-renewal, within thirty (30) days, to (1) cease using the asset; (2) remove the asset from its computers; and (3) certify to the contractor that use has been discontinued and all copies of the asset have been returned to the contractor or destroyed. The government has failed to comply with the foregoing material provisions of the lease agreement.
3. By signing the Essential Use letter the government made a false statement to the contractor. The contractor fully relied on this warranty to its detriment and committed financially to a lending partner to induce the third party lending source to finance the lease; thereby, allowing the contractor to pay the software publisher for the software and to deliver the software for unimpeded use by the government. The government's misrepresentation regarding the essential need of the software has had a significant financial impact on both the contractor and its lending partner.
4. The statement that the software was "integral to the user's system" as the government stated in the Essential Use letter, cannot be reconciled with the failure to renew the lease, given that the software was accepted and two of the four payments were made, thus certifying the software's conformity to the order. Please note that the software was unconditionally accepted under DD250 document dated November 3, 1999. Moreover, you have disclosed that the software was acquired on a test basis, making it clear that the software was not known to be either essential or integral to the user's system and was neither.
5. The government has failed to use its best efforts to annually budget and allocate appropriated funds to support the lease payments.

Accordingly, claimant requests that the contracting officer grant this claim in full and add interest in accordance with FAR 52.233-1 (e).

Should you have any questions please address them to Mr. Michael E. Geltner, Esq. at (202) 547-1136.

March 14, 2005
200.JDB.02-0008

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Kathleen A. Dougherty

3-14-05
Date

DEPARTMENT OF THE AIR FORCE
HEADQUARTERS STANDARD SYSTEMS GROUP (SSG)
MAXWELL AIR FORCE BASE GUNTER ANNEX ALABAMA

10 December 2002

MEMORANDUM FOR JOHN DEL BANDO
NORTHROP GRUMMAN CORPORATION
COMPUTING SYSTEMS
222 WEST SIXTH STREET
SAN PEDRO CA 90731

FROM: HQ SSG/PKS
501 E. MOORE DR, BLDG 884
MAFB-GUNTER ANNEX AL 36114

SUBJECT: Contracting Officer's Final Decision:
Northrop Grumman Computing Systems 12 June 2002 Claim
Contract F01620-94-D-0002 D.O. 5981 and Special Offer #330, Rev 3

1. You are seeking payment of $570,000 (plus interest) for options not exercised under Contract No. F01620-94-D-0002, P00220 and Delivery Order 5981. Delivery Order 5981 involved ID/IQ fixed-price commercial item CLINs, and was for the lease of interim licenses of commercial Starburst OmniCast server software, with options for maintenance support, and an option for ultimate purchase. The Base Period of the contract was for a lease from 20 Oct 99 through 30 Nov 99 for a price of $100,000. Option Period 1 was for a lease from 1 Dec 99 through 30 Nov 00 for a price of $285,000. Option Period 2 was for a lease from 1 Dec 00 through 30 Nov 01 for a price of $285,000. Option Period 3 was a purchase option for $285,000, provided that the Base Period and both Option Periods 1 and 2 had been executed.

2. Your initial I-CASE lease proposal included language attempting to make lease terms for another software product a multiyear contract, and included settlement amounts for failure to exercise the option periods. The Government told you such terms were unacceptable, and that the Government would not enter such a contract. You then revised your proposal, taking out the portions of it that attempted to make exercise of the options a requirement and the portions containing liquidated amounts for failure to exercise an option. The negotiated, revised I-CASE lease terms, not the original Logicon lease proposal, were the basis for the Starburst delivery order. The parties negotiated an ID/IQ contract, according to the language in DO 5981, with options exercisable at the discretion of the Government.

3. The Government entered into a contract for the base period with the issuance of Delivery Order 5981, and subsequently issued Delivery Order 6022 to exercise and fund Option Period 1. However, the Government did not exercise any other options.

4. The preliminary testing of your product indicated it was potentially capable of meeting the Government's needs. However, when your product was evaluated in field tests (conducted from Jan 00 through Apr 00 ), several limitations were discovered. The dynamics of the battlefield, NTDR environment negatively affected the OmniCast software's performance, and the Government determined it did not have a bona fide need for this multicast technology and would be better served by not exercising Option Period 2, but instead relying on technical capabilities that were already inherent in the ABCS 6.0 baseline—the OmniCast software was *not* replaced with a functionally similar multicast asset. The negotiated terms of the lease expressly recognized this basis for non-renewal of the option.

5. Additionally, the character of the product the Government was leasing from you changed dramatically when your vendor, Starburst, chose to sell its company to Adero in Mar 00. The product would no longer have the chance to be improved by commercial market competition, as Adero announced the product would no longer be sold commercially nor would Adero continue to provide future upgrades and updates to the software—only a 12-month period of patches or fixes, and 5X8 phone support. Indications are Adero bought OmniCast for the purpose of keeping it out of the hands of its potential competitors. The deficiencies of the OmniCast software would not be addressed in commercial upgrades and the source code for the OmniCast software would remain proprietary and would not be released or sold to the Army so that the Army could maintain and upgrade the OmniCast software on its own.

6. In evaluating whether to exercise Option Period 2, the Government determined it no longer had a bona fide need for OmniCast's multicast technology. The OmniCast software did not meet the bona fide requirements of the ABCS software version being fielded. The Government then did what it was entitled to do under the terms of Delivery Order 5981: it did not exercise Option Period 2. The Government did not breach the terms of the contract.

7. My response to the five reasons you claim the Government breached its contract with you is as follows:

a. The terms of the contract expressly allowed for circumstances other than non-appropriation of funds as a reason for not exercising the option periods. You may have desired contract terms that made the contract essentially a multiyear contract, as your initial I-CASE lease proposal language sought to do, but your initial proposal terms were rejected. The parties negotiated their removal, and the language of the contract as signed reflects that removal.

b. When the Government notified you it was not going to exercise Option Period 2, Guy Speers (Vice-President of Logicon Applications Solutions) told the Government not to return the software "or make any definitive decisions about its disposition" until you met with the Government about it. The Government complied with your request, and to date, has not received any contrary direction. The Government has not used the software since the expiration of Option Period 1.

c. The Essential Use letter you prepared, and told the Government you needed signed in order to obtain financing to perform Delivery Order 5981 did not modify the later bilaterally negotiated, signed terms of P00220 and DO 5981, does not create a warranty, nor does it take

away the Government's discretion not to exercise an option. Nothing in the language of the Essential Use letter made the contract a multiyear contract.

d. The fact that the software was of use in the Base Period and Option Period 1 did not require the Government to then purchase a lease for its license for Option Period 2.

e. The Government had no obligation to seek funding for an option period for which it did not have a bona fide need.

8. This is my final decision. You may appeal this decision to the Armed Services Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals and provide a copy to me. The notice shall indicate that an appeal is intended, reference this decision and identify the contract by number. With regard to appeals to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the Board's small claim procedures for claims of $50,000.00 or less, or its accelerated procedure for claims of $100,000.00 or less. Instead of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

HARRY M. BRYAN III
Contracting Officer