# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | | | |
|---|---|---|---|
| 1. CONTRACT ID CODE | 9 - Multiple Type | PAGE OF PAGES | 1 of 3 |
| 2. AMENDMENT/MODIFICATION NO. F01620-94-D-0002 P00220 | 3. EFFECTIVE DATE 1999 OCT 20 | 4. REQUISITION/PURCHASE REQ.NO. | 5. PROJECT NO. (If applicable) |
| 6. ISSUED BY HQ SSG/PKS CODE FA8771 | | 7. ADMINISTERED BY (If other than Item 6) CODE FA8771 | |

6. DEPARTMENT OF THE AIR FORCE
HQ SSG/PK
85 HODGES AVENUE SO, BLDG 403
MAFB-GUNTER ANNEX AL 36114-3207
TERESA HARRIS 334-416-2333
Teresa.Harris@Gunter.AF.mil

7. STANDARD SYSTEMS GROUP/I-CASE
DIRECTORATE OF CONTRACTING/PKS-4
85 HODGES AVENUE SO BLDG 403
MAFB-GUNTER ANNEX AL 36114-3004

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)
LOGICON, INC.
222 W SIXTH ST - PO BOX 471
SAN PEDRO CA 90733-0471
(310) 831-0611

CODE 56474 FACILITY CODE

| (X) | |
|---|---|
| | 9A. AMENDMENT OF SOLICITATION NO. |
| | 9B. DATED (SEE ITEM 11) |
| X | 10A. MODIFICATION OF CONTRACT/ORDER NO. SEE BLOCK 2 |
| | 10B. DATED (SEE ITEM 13) 12 APR 1994 |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted, or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATION OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (X) | | |
|---|---|---|
| | A. | THIS CHANGE ORDER IS ISSUED PURSUANT TO: ( ) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. ITEM 10A. |
| | B. | THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. | THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 43.103(A)(3) - AGREEMENT OF THE PARTIES |
| | D. | OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

POC: T. HARRIS
PH: 334-416-2333

SEE SCHEDULE

3/1/06 (handwritten, with 4 above)

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | | | |
|---|---|---|---|
| 15A. NAME AND TITLE OF SIGNER (Type or print) JOHN DEL BANDO SR. CONTRACTS ADMINISTRATOR | | 16A. NAME AND TITLE OF SIGNER (Type or print) TERESA HARRIS | |
| 15B. CONTRACTOR/OFFEROR [signature] (Signature of person authorized to sign) | 15C. DATE SIGNED 20 OCT 99 | 16B. UNITED STATES OF AMERICA BY [signature] (Signature of Contracting Officer) | 16C. DATE SIGNED 20Oct99 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE
ConWrite Version 3.21

30-105

STANDARD FORM 30 (REV.10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

14A. The purpose of this modification P00220 is:

To incorporate the "LEASING TERMS AND CONDITIONS" in Annex AT of Attachment 26 of "I-CASE Special Offer #330 Revision 03" of 10/18/99, entitled, "Special Buy for ICASE Customers Starburst," attached. This will facilitate potential delivery order (DO) 5981 and subsequent DOs for a license for Starburst CLIN 0005 Software products to be acquired by lease for CECOM, and orderable CLIN 0007 Software Maintenance (Purchase Options) for Base Purchase for CECOM, in accordance with these terms and conditions. Prices are firm, fixed prices, as follows:

| | | | |
|---|---|---|---|
| CLIN 0005 | Base Lease Offer Price | 1 LO | $100,000 |
| CLIN 0005 | Option 1 Lease Offer Price | 1 LO | $285,000 |
| CLIN 0005 | Option 2 Lease Offer Price | 1 LO | $285,000 |
| CLIN 0005 | Option 3 Lease Offer Price | 1 LO | $285,000 |
| CLIN 0007 | Maintenance for FY01 | 1 JB | $143,820 |
| CLIN 0007 | Maintenance for FY02 | 1 JB | $143,820 |

14B. (1) All standard I-CASE Terms and Conditions apply for all B-Table items, except as identified in the "I-CASE Special Offer #330 Revision 03" of 10/18/99, entitled, "Special Buy for ICASE Customers Starburst." I-CASE Special Offer #330 Revision 03, including the "Leasing Terms and Conditions" (Attachment 1 of I-CASE Special Offer #330 Revision 03) is incorporated as Attachment 1 of Annex AT of Attachment 26 of the I-CASE contract. For purposes of Order of Precedence, in the event of any inconsistencies between Attachment 1 of Annex AT of Attachment 26 applicable to this modification and any other terms and conditions of Annex AT of Attachment 26, Attachment 1 of Annex AT of Attachment 26 shall have precedence as applied to DOs issued in accordance with it.

(2) I-CASE Special Offer #330 Revision 03 provides the Government rights to various options, including but not limited to "OPTION 1...3, Lease Offer Price(s)" and "Outyear Maintenance" Purchase Options for "Year 2 FY01 and Year 3 FY02." Those Purchase Options are not acquired by this modification. The pricing and other terms of the I-CASE Special Offer #330 that relate to future acquisitions will be obligated by the Contracting Officer only by issuing DOs upon determination that exercise is in the government's interest and funding is available. Notwithstanding clause F-4(f) of the I-CASE contract, which gives Logicon the right to reject DOs in the absence of CLIN 0001 funding, Logicon agrees to accept any and all DO(s) issued in accordance with provisions of I-CASE Special Offer #330 Revision 03 for purposes of ordering OPTION 1 Lease Offer Price, OPTION 2 Lease Offer Price, OPTION 3 Lease Offer Price, Lease End, Asset Additions, or Outyear Maintenance Purchase Options.

(3) The products of Starburst offered by I-CASE Special Offer #330 Revision 03 shall be Year 2000 compliant in accordance with Federal Acquisition Regulation (FAR) 39.106(a)(1), that is, the information technology to be delivered hereunder shall be Year 2000 compliant in accordance with the definition at FAR 39.002 at the time of delivery. "Year 2000 compliant" means, with respect to information technology, that the information technology accurately processes date/time data (including, but not limited to, calculating, comparing, and sequencing) from, into, and between the twentieth and twenty-first centuries, and the years 1999 and 2000 and leap year calculations, to the extent that other information technology, used in combination with the information technology being acquired, properly exchanges date/time data with it. **Provided that the Starburst products are under current maintenance or warranty, the Year 2000 compliance warranty shall be ongoing and is not affected or limited by any other warranty provision in this agreement.**

14C. The addition of the above referenced terms and conditions does not change the estimated value of the contract. The total amount obligated on this contract remains unchanged at $52,659,992.00 (exclusive

of delivery orders) and the total estimated amount of the contract, as reflected in Block 15G of the Standard Form 26, remains unchanged at $668,532,238.31. Funding will be cited on delivery orders as services or products are ordered.

14D. As a result of these changes, make the following page changes:

In the Contract:

| REMOVE | INSERT |
|---|---|
| Page 288 of 298 | Page 288 of 298 |

In the Attachments:

| REMOVE | INSERT |
|---|---|
| N/A | Pages 8-11, Attachment 1 of Annex AT of Attachment 26 |

14E. This Supplemental Agreement constitutes full, complete, and final settlement of any and all rights the contractor has to an equitable adjustment, including any and all interest, pursuant to either the "Changes" clause or any other provision of the contract, arising out of or relating to the changes implemented by this Supplemental Agreement.

All other terms and conditions remain unchanged and in full force and effect.

PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS,
SECTION J - LIST OF ATTACHMENTS


| | | |
|---|---|---|
| Annex AQ | Section B tables of orderable OIS services and products | 11 |
| Annex AR | Section B tables of orderable Hummingbird services and products | 9 |
| Annex AS | Section B tables of orderable Artecon services and products | 10 |
| Annex AT | Section B tables of orderable StarBurst services and products | 26 |
| Annex AU | Section B tables of orderable Enterworks services and products | 32 |
| Annex AV | Section B tables of orderable HP services and products | 16 |
| Annex AW | Section B tables of orderable CCD services and products | 33 |
| Annex AX | Section B tables of orderable SunService services and products | 125 |
| Annex AY | Section B tables of orderable Platinum services and products | 513 |
| Annex AZ | Section B tables of orderable Century Services services and Products | 15 |
| Annex BA | Section B tables of orderable Intersolv services and products | 26 |
| Annex BB | Section B tables of orderable Provenance services and products | 15 |
| Annex BC | Section B tables of orderable BMC services and products | 51 |
| Annex BD | Section B tables of orderable IBM Lotus services and products | 17 |
| Annex BG | Section B tables of orderable PSSoftware services and products | 9 |
| J-27 Attachment 27 | List of Items to be Delivered with Limited or Restricted Rights (Reference H-12). | 28 |


CHANGED BY MODIFICATION P00220

I-CASE Special Offer #330 Revision 3 *Attachment 1*

# LEASING TERMS AND CONDITIONS

Statement

These lease terms and conditions are hereby incorporated by reference in their entirety within the I-CASE Contract No. F01620-94-D-0002. The I-CASE Contract, applicable Delivery Order and these lease terms and conditions shall constitute the entire agreement between Logicon, Inc. ("Contractor") and the U.S. Government ("Government") relative to the CECOM Starburst lease transaction under the aforementioned contract. It is hereby mutually understood and agreed that as inducement for Contractor entering into this Agreement, the Government has provided required information relative to the essential use of the software Asset which includes, but is not limited to, a description of the currently identified applications to be supported and planned life-cycle operations for the leased software.

1. Lease.

(a) The Parties hereto understand and agree that the form of this Agreement is a lease. The Government shall not be obligated to continue performance during the full period of the lease, if pursuant to FAR 52.232-19, funding for the lease Asset and above-mentioned life-cycle operations is not appropriated and is, therefore, unavailable during any Government fiscal year applicable to the effective Lease Term. In addition, the Government shall be relieved from all obligations under the lease, if the Bona Fide Needs of the Government for the Asset cease to exist and such need is not fulfilled within the succeeding twelve (12) months, from the date of non-renewal/termination, with an Asset performing similar functions which the leased Asset was intended to perform.

(b) The Parties hereto expressly understand and agree that the Contractor and the Government shall not be obligated to take any action or perform any covenant under this lease agreement which is contrary to the Anti-Deficiency Act or Federal law. Accordingly, the lease Delivery Orders shall not be deemed to obligate succeeding fiscal year funds or otherwise commit the Government to continue performance beyond the current government fiscal year. The Government agrees to use its best efforts to annually obtain appropriated funds to support the lease under the applicable Delivery Order.

(c) The Contractor has relied on the specified lease term in order to derive the fair Lease Payment.

(d) The Starburst products identified in Special Offer #330 are priced and are being provided to the lessee as a single Asset. If the Government terminates the lease, termination will apply to the entire Delivery Order and not to individual products.

2. **Lease Payments.**

The Lease Payment Plan is shown in EXHIBIT A.

3. **Lease End**

Upon completion of the entire Lease Term, and full payment of all amounts set forth on Exhibit A "Lease Payment Plan", the Government, without taking further action or accepting further obligations, shall automatically receive a perpetual, fully paid-up license to use the Asset in this Special Offer.

4. **License Rights.**

License rights in software Asset shall vest in the Government upon Contractor's delivery to the Government and signing of the DD250 document. Upon return, for any reason, of the Asset to the Contractor, Government shall relinquish license rights to the Contractor. While license rights rest with the Government, the Contractor (or Contractor's Assignee) shall retain a first security interest in the Asset, and the Government shall sign such documentation as are necessary to perfect the Contractor's (or Contractor's Assignee) security interest. The Government may not, without prior written approval

from the Contractor: (1) transfer the leased Asset from the Air Force to another Government organization; or (2) "trade-in" the leased Asset for other assets.

5. **Risk of Loss.**

(a) Government is relieved from all risk of loss or damage to the Asset during periods of delivery. Government shall be responsible for any loss or damage to the Asset during the Lease Term. Government shall assume risk of loss or damage to the Asset during relocation unless Contractor shall undertake such relocation under a modification to the Delivery Order.

(b) If any Asset is damaged, Government shall promptly notify Contractor and shall, at Government's expense, within sixty (60) days of such damage, cause to be made such repairs as are necessary to return such Asset to its previous condition.

(c) In the event any media and documentation are destroyed, damaged beyond repair, lost, stolen, or taken by governmental action for the Lease Term, the Government and Contractor will negotiate reasonable cost for replacement of media and documentation.

6. **Taxes.**

As provided within the FAR, and notwithstanding the provision of FAR 52.212-4(k), FAR 52.229-1 shall apply to this lease agreement and is hereby incorporated by reference.

7. **Care of Asset.**

During the Lease Term, the Government shall continue maintenance support, as identified in I-CASE Special Offer #330.

8. **Asset Additions**

(i) The Lease Term for each Asset addition (excluding updates as provided in Special Offer 330) placed under the Delivery Order will be coterminous with the Lease Term applicable to the original Network License Asset. The price for the change or addition will take into account the remaining Lease Term of the existing Asset, the price of the change or addition requested and the Lease Term of the new Asset addition. The Delivery Order shall continue for its Lease Term and the Government shall issue a modification to the Delivery Order which sets forth the new Lease Payment.

(ii) The Asset addition Lease Payment will be calculated in accordance with the terms of the Contractor's "Special Offer" which will be presented to the Government detailing the additions and applicable lease payments.

9. **Relocation.**

The Government shall keep records of the location of the Software License, Software Master Media and Manuals (Collectively referred to as "Asset") and use best efforts to provide Contractor with thirty (30) days written notice of any intended relocation of the Asset. All expenses of the relocation shall be paid by Government including transportation and reinstallation at the new site. Lease Payments shall continue during the Government's relocation of the Assets.

10. **Return of Asset.**

Within thirty (30) days after the date of Termination for Convenience or non-renewal of the Delivery Order anticipated full Lease Term, the Government shall, at its own risk and expense, have the Asset

packed for shipment in accordance with the Contractor's specifications and shall return the Asset to Contractor in the same condition as when delivered, ordinary wear and tear excepted. Upon request by the Government and at the Government's expense, Contractor shall assist in the de-installation and packing of Asset so terminated or non-renewed. Such services, if required, are outside the scope of this Agreement. Additionally, in the event of a termination or non-renewal prior to completion of the full Lease Term , the lessee shall, within thirty (30) days from the occurrence of such event: (1) cease using the Asset; (2) remove the Asset from all computers on which the Asset was installed; and (3) certify to the Contractor that usage of the Asset has been discontinued and that all copies of the Asset's media and documentation have been returned to the Contractor or destroyed.

**11. No Discount for Early Payment.**

No discount shall be applicable to early payment by the Government.

**12. Reserved.**

**13. Definitions.**

| | |
|---|---|
| Government/Lessee: | USArmy Communications Electronics Command (CECOM) |
| Contractor/Lessor: | Logicon, a wholly owned subsidiary of Northrop-Grumman Corp. |
| Contract: | I-CASE F01620-94-D-0002 |
| Delivery Order: | I-CASE Special Offer #330 and DO 5981 |
| Asset: | Starburst license as described in I-CASE Special Offer #330 |
| Lease Payment: | The periodic payment set forth in Delivery Order 5981 and Special Offer #330 |
| Lease Term: | The entire length of time for which the Asset is anticipated to be leased, as set forth in the Delivery Order. |
| Commencement Date | Date the Asset is shipped to the Government. |
| Acceptance: | Thirty-one (31) days from delivery of the Asset. |
| First Lease Payment Due Date: | Thirty (30) days after receipt of invoice. |
| End of Lease Term Option: | As specified in EXHIBIT A |

**14. Financing Statements.**

Government agrees, upon Contractor's request, to execute and deliver to Contractor any reasonable financing statements, fixture filings or other instruments necessary for expedient filing, recording or perfecting the interest and title of Contractor in this Agreement and the Asset. Government agrees that where permitted by law, a copy of this Agreement may be filed in lieu of a financing statement.

**15. Purchase Option.**

The Government has the right to purchase the Asset. The purchase price will be calculated in the amount, and on the date, stated in Exhibit A, entitled "Purchase Option". The Government agrees to use its best efforts to provide reasonable advance written notice to the Contractor in the event of such purchase.

I-CASE Special Offer #330 Revision 3 Attachment 1

# EXHIBIT A
# SCHEDULE

1. Lease Payment Plan (Strictly for Planning Purposes):

| Payment Number | Order Due Date | Payment Amount |
|---|---|---|
| 1 | 10/14/1999 | $100,000.00 |
| 2 | 12/01/1999 | $285,000.00 |
| 3 | 12/01/2000 | $285,000.00 |

2. Purchase Option:

| In lieu of Payment Number | Title Acquisition Due Date | Title Acquisition Amount |
|---|---|---|
| 1 | 10/14/1999 | $856,000.00 |
| 2 | 12/01/1999 | $805,287.00 |
| 3 | 12/01/2000 | $570,000.00 |
| 4* | 12/01/2000 | $285,000.00 |

* Note

To exercise the purchase option 4 Payment, a delivery order in the amount of $285,000.00 must be received by December 01, 2000, with the funding subject to availability of funds and fully funded no later than December 01, 2001. This option can not be executed unless lease payments 1, 2, and 3 have also been executed.

DEC. 3.1999 2:41PM ICASE PROGRAM OFFICE

**SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS**
*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30*

1. REQUISITION NUMBER

PAGE 1 OF 7

2. CONTRACT NO. F01620-94-D-0002
3. AWARD/EFFECTIVE DATE 1999 DEC 03
4. ORDER NUMBER 6022
5. SOLICITATION NUMBER
6. SOLICITATION ISSUE DATE
7. FOR SOLICITATION INFORMATION CALL:
a. NAME
b. TELEPHONE NUMBER (No collect calls)
8. OFFER DUE DATE/ LOCAL TIME

9. ISSUED BY CODE FA8771

DEPARTMENT OF THE AIR FORCE
HQ SSG/PK (I-CASE PROGRAM)
85 HODGES AVENUE SO, BLDG 403
MAFB-GUNTER ANNEX AL 36114-3207
TERESA HARRIS 334-416-2333

Teresa.Harris@Gunter.AF.mil

10. THIS ACQUISITION IS
☐ UNRESTRICTED
☐ SET ASIDE: % FOR
☐ SMALL BUSINESS
☐ SMALL DISADV. BUSINESS
☐ 8(A)

SIC:
SIZE STANDARD:

11. DELIVERY FOR FOB DESTINATION, UNLESS BLOCK IS MARKED
☐ SEE SCHEDULE

12. DISCOUNT TERMS N

☒ 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)

13b. RATING DO-A7

14. METHOD OF SOLICITATION ☐ RFQ ☐ IFB ☐ RFP

15. DELIVER TO CODE

SEE SECTION F

16. ADMINISTERED BY CODE FA8771

STANDARD SYSTEMS GROUP/I-CASE
DIRECTORATE OF CONTRACTING/PKS-4
85 HODGES AVENUE SO BLDG 403
MAFB-GUNTER ANNEX AL 36114-3004

17a. CONTRACTOR/ OFFEROR CODE 56474 FACILITY CODE

LOGICON, INC.
222 W SIXTH ST - PO BOX 471
SAN PEDRO CA 90733-0471
(310) 831-0611

TELEPHONE NO.

☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18a. PAYMENT WILL BE MADE BY

DFAS-SL-FPV
P.O. BOX 200009
ST LOUIS MO 63120-0009

received
12-8-99

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED ☐ SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | See Schedule | | | | |

25. ACCOUNTING AND APPROPRIATION DATA
See Section G

26. TOTAL AWARD AMOUNT (For Govt. Use Only)
$265,000.00

☐ 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED.

☐ 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED.

☐ 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ____ TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

☐ 29. AWARD OF CONTRACT: REFERENCE ______ OFFER DATED ______. YOUR OFFER SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

30a. SIGNATURE OF OFFEROR/CONTRACTOR
[signature]

31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER)
[signature]

30b. NAME AND TITLE OF SIGNER
John Del Bando Sr. Contracts Admin
30c. DATE SIGNED
D3 Dec 99

31b. NAME OF CONTRACTING OFFICER
TERESA HARRIS
31c. DATE SIGNED
03 Dec 99

32a. QUANTITY IN COLUMN 21 HAS BEEN
☐ RECEIVED ☐ INSPECTED ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED

33. SHIP NUMBER — PARTIAL / FINAL
34. VOUCHER NUMBER
35. AMOUNT VERIFIED CORRECT FOR
36. PAYMENT ☐ COMPLETE ☐ PARTIAL ☐ FINAL
37. CHECK NUMBER

32b. SIGNATURE OF AUTHORIZED GOVT. REPRESENTATIVE
32c. DATE

38. S/R ACCOUNT NUMBER
39. S/R VOUCHER NUMBER
40. PAID BY

41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT
41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER
41c. DATE

42a. RECEIVED BY (Print)
42b. RECEIVED AT (Location)
42c. DATE REC'D (YY/MM/DD)
42d. TOTAL CONTAINERS

AUTHORIZED FOR LOCAL REPRODUCTION
SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT
STANDARD FORM 1449 (10-95)
Prescribed by GSA - FAR (48 CFR) 53.212

ConWrite Version 3.30

5
3/1/06

DEC. 3.1999 2:41PM ICASE PROGRAM OFFICE NO.484 P.1

**SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS**
*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30*

1. REQUISITION NUMBER
PAGE 1 OF 7

2. CONTRACT NO. F01620-94-D-0002
3. AWARD/EFFECTIVE DATE 1999 DEC 03
4. ORDER NUMBER 6022
5. SOLICITATION NUMBER
6. SOLICITATION ISSUE DATE

7. FOR SOLICITATION INFORMATION CALL:
a. NAME
b. TELEPHONE NUMBER (No collect calls)
8. OFFER DUE DATE/ LOCAL TIME

9. ISSUED BY CODE FA8771

DEPARTMENT OF THE AIR FORCE
HQ SSG/PK (I-CASE PROGRAM)
85 HODGES AVENUE SO, BLDG 403
MAFB-GUNTER ANNEX AL 36114-3207
TERESA HARRIS 334-416-2333

Teresa.Harris@Gunter.AF.mil

10. THIS ACQUISITION IS
☐ UNRESTRICTED
☐ SET ASIDE: % FOR
☐ SMALL BUSINESS
☐ SMALL DISADV. BUSINESS
☐ 8(A)
SIC:
SIZE STANDARD:

11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED
☐ SEE SCHEDULE

12. DISCOUNT TERMS
N

☒ 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)
13b. RATING
DO-A7

14. METHOD OF SOLICITATION
☐ RFQ ☐ IFB ☐ RFP

15. DELIVER TO CODE

SEE SECTION F

16. ADMINISTERED BY CODE FA8771

STANDARD SYSTEMS GROUP/I-CASE
DIRECTORATE OF CONTRACTING/PKS-4
85 HODGES AVENUE SO BLDG 403
MAFB-GUNTER ANNEX AL 36114-3004

17a. CONTRACTOR/ OFFEROR CODE 56474 FACILITY CODE

LOGICON, INC.
222 W SIXTH ST - PO BOX 471
SAN PEDRO CA 90733-0471
(310) 831-0611

TELEPHONE NO.

☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18a. PAYMENT WILL BE MADE BY CODE HQ0304

DFAS-SL-FPV
P.O. BOX 200009
ST LOUIS MO 63120-0009

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED ☐ SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | See Schedule | | | | |

25. ACCOUNTING AND APPROPRIATION DATA
See Section G

26. TOTAL AWARD AMOUNT (For Govt. Use Only)
$285,000.00

☐ 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED.

☐ 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED.

☐ 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ______ TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

☐ 29. AWARD OF CONTRACT: REFERENCE ______ OFFER DATED ______. YOUR OFFER SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

30a. SIGNATURE OF OFFEROR/CONTRACTOR
[signature]

30b. NAME AND TITLE OF SIGNER
JOHN DEL BANDO SR. CONTRACTS ADMIN
30c. DATE SIGNED
03 DEC 99

31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER)

31b. NAME OF CONTRACTING OFFICER
TERESA HARRIS
31c. DATE SIGNED

32a. QUANTITY IN COLUMN 21 HAS BEEN
☐ RECEIVED ☐ INSPECTED ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED

32b. SIGNATURE OF AUTHORIZED GOVT. REPRESENTATIVE
32c. DATE

33. SHIP NUMBER
PARTIAL FINAL
34. VOUCHER NUMBER
35. AMOUNT VERIFIED CORRECT FOR

36. PAYMENT
☐ COMPLETE ☐ PARTIAL ☐ FINAL
37. CHECK NUMBER

38. S/R ACCOUNT NUMBER
39. S/R VOUCHER NUMBER
40. PAID BY

41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT
41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER
41c. DATE

42a. RECEIVED BY (Print)
42b. RECEIVED AT (Location)
42c. DATE REC'D (YY/MM/DD)
42d. TOTAL CONTAINERS

AUTHORIZED FOR LOCAL REPRODUCTION
SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT
STANDARD FORM 1449 (10-95)
Prescribed by GSA - FAR (48 CFR) 53.212

ConWrite Version 3.30

SCHEDULE

19A. Delivery order (DO) 6022 is issued to acquire the Option 1 Lease Offer Price Purchase of LOGICON I-CASE Special Offer # 330 Revision 04," dated 23 Nov 99, as attached. Included in this DO are contract line item numbers (CLIN) 0005 Software and (CLIN) 0007 Software Maintenance, and rights and other considerations. Customer is US Army CECOM. **Registered User No. AR-007-002.**

19B. (1) All standard I-CASE Terms and Conditions apply for all B-Table items, except as identified in the LOGICON I-CASE Special Offer # 330 Revision 04 of 23 Nov 99, entitled, "Special Buy for ICASE Customers Starburst." The "LEASING TERMS AND CONDITIONS" to Special Offer # 330 Revision 04 (Attachment 1 of I-CASE Special Offer #330 Revision 04, pages 1-4) were incorporated as Attachment 1 of Annex AT of Attachment 26 of the I-CASE contract in order to facilitate this DO. For purposes of Order of Precedence, in the event of any inconsistencies between Attachment 1 of Annex AT of Attachment 26 applicable to this DO and any other terms and conditions of Annex AT of Attachment 26, Attachment 1 of Annex AT of Attachment 26 shall have precedence as applied to this DO.

(2) The terms and conditions of I-CASE Special Offer # 330 Revision 04 include provisions which may apply to other CLINs than 0005 and 0007. Special Offer # 330 Revision 04 provides the Government rights to various options, including but not limited to "Options 1 and 2 Lease Offer Price" and "Outyear Maintenance for Year 2 FY01 and Year 3 FY02" Options schedule for above package. Those options are not acquired by this DO. The pricing and other terms of the I-CASE Special Offer # 330 Revision 04 that relate to future acquisitions will be obligated by the Contracting Officer only by issuing DOs upon determination that exercise is in the government's interest and funding is available. They are provided as an attachment to this DO for users' information and future planning purposes.

The Government cannot contract or guarantee Logicon that pricing information will not be released if a proper FOIA request is made. If such a request is made, we will, of course, give Logicon written notice prior to any prospective Government release if we determine it is not confidential.

(3) The products of Starburst required by this delivery order shall be Year 2000 compliant in accordance with Federal Acquisition Regulation (FAR) 39.106(a)(1), that is, the information technology to be delivered hereunder shall be Year 2000 compliant in accordance with the definition at FAR 39.002 at the time of delivery. "Year 2000 compliant" means, with respect to information technology, that the information technology accurately processes date/time data (including, but not limited to, calculating, comparing, and sequencing) from, into, and between the twentieth and twenty-first centuries, and the years 1999 and 2000 and leap year calculations, to the extent that

other information technology, used in combination with the information technology being acquired, properly exchanges date/time data with it. **Provided that the Starburst products are under current maintenance or warranty, the Year 2000 compliance warranty shall be ongoing and is not affected or limited by any other warranty provision in this agreement.**

19C. The delivery schedule of this order is:

| | REQUIRED DELIVERY DATE |
|---|---|
| CLIN 0005 | NLT 18 Jan 00 |
| CLIN 0007 | One year from date of shipment of CLIN 0005 products |

The Starburst products include a 90-day warranty of performance including its ability to operate over NTDR radio devises.

19D. Invoices shall be mailed to Mr. Robert Spredbury, HQ SSG/DIFS, 501 East Moore Drive, BLDG 884, MAFB-Gunter Annex, AL, 36114-3004.

19E. Funds are obligated by this delivery order in the amount of $285,000.00 for CLIN 0005 and CLIN 0007, as identified on Attachment 1 of this delivery order. All prices are firm, fixed prices.

**WARNING: FUND CITE IN "SECTION G" MAY BE IRREGULAR OR INCOMPLETE; COMPLETE ACCOUNTING/APPROPRIATION DATA, AS THEY APPEAR ON BOTH MIPR AND PR, FOLLOW:**

PR NUMBER

F5DIFS93370101

MIPR NUMBER

MIPR0CICA00026

ACRN

AA

FUND CITE

2102040 5F 5F01 P654818 255Y 654818.C34.00.12.00
4AZZZ-0 S28043

AMOUNT

$285,000

SCHEDULE

19F. This delivery order consists of:

(1) SF 1449 and three continuation pages,

(2) Attachment 1 which specifies the items for "Delivery Order DO 6022 for US Army CECOM" (two pages)

(3) Attachment 2: I-CASE Special Offer # 330 Revision 04 of 23 Nov 99, entitled "Special Buy for ICASE Customers Starburst", including "LEASING TERMS AND CONDITIONS." (4 pages). [Note that the Leasing Terms and Conditions noted as attached to I-CASE Special Offer # 330 Revision 04 have been incorporated into the I-CASE contract as Attachment 1 of Annex AT of Attachment 26 (see modification P00227).]

↑ ADDS PAYMENT #4 TO CONTRACT Like MOD 01 ADDS PAYMENT #4 to P.O. 5981

SECTION B

| ITEM | SUPPLIES OR SERVICES | Qty<br>Purch Unit | Unit Price<br>Total Item Amount |
|---|---|---|---|
| 0005 | | 1<br>LO | $285,000.00<br>$285,000.00 |

*Noun:* SOFTWARE
*ACRN:* AA
*Security:* U
*NSN:* N - Not Applicable
*Contract type:* J - FIRM FIXED PRICE
*Inspection:* DESTINATION
*Acceptance:* DESTINATION
*FOB:* DESTINATION
*Descriptive Data:*
CLIN 0005 AMOUNT: ($79,760.00) due to the discount. REFERENCE ATTACHMENT 1.

*****SEE THE SCHEDULE AND ATTACHMENT 1*****

| ITEM | SUPPLIES OR SERVICES | Qty<br>Purch Unit | Unit Price<br>Total Item Amount |
|---|---|---|---|
| 0007 | | 1<br>LO | $0.00<br>$0.00 |

*Noun:* SOFTWARE MAINTENANCE
*ACRN:* AA
*Security:* U
*NSN:* N - Not Applicable
*Contract type:* J - FIRM FIXED PRICE
*Inspection:* DESTINATION
*Acceptance:* DESTINATION
*FOB:* DESTINATION
*Descriptive Data:*
*****SEE THE SCHEDULE AND ATTACHMENT 1*****

SECTION F

| ITEM | SUPPLIES SCHEDULE DATA | QTY | SHIP TO | MARK FOR | TRANS PRI | DATE |
|---|---|---|---|---|---|---|
| 0005 | | 1 | U | | | 07 Dec 1999 |
| | *Noun:* | SOFTWARE | | | | |
| | *ACRN:* | AA | | | | |
| | *Sec. Class:* | U | | | | |
| | *Descriptive Data:* | | | | | |
| | *****SEE THE SCHEDULE AND ATTACHMENT 1***** | | | | | |
| 0007 | | 1 | U | | | ASREQ |
| | *Noun:* | SOFTWARE MAINTENANCE | | | | |
| | *ACRN:* | AA | | | | |
| | *Sec. Class:* | U | | | | |
| | *Descriptive Data:* | | | | | |
| | *****SEE THE SCHEDULE AND ATTACHMENT 1***** | | | | | |

SECTION G

| ACRN | Appropriation/Lmt Subhead/Supplemental Accounting Data | Obligation Amount |
|---|---|---|
| AA | 2102040 5F 5F01 P654818 255Y 654818C340012 | $285,000.00 |

*Funding breakdown:* On CLIN 0005: $285,000.00
On CLIN 0007: $.00

*PR/MIPR:* F5DIFS93370101 $285,000.00

*Descriptive data:*
The fund cite appears as follows on the PR: 2102040 5F 5F01 P654818 255Y 654818.C34.00.12.00

4AZZZ-0 S28043.

MIPR# MIPR0CICA00026

*****SEE THE SCHEDULE AND ATTACHMENT 1*****

Attachment Number: [illegible] Contract Number [illegible]

**DELIVERY ORDER DO 6022 FOR US Army CECOM**

## I-CASE FUNDS INFORMATION

**Delivery Order Number:** DO 6022 Special Offer 330r4 - Starburst
**User ID:** AR-007-002
**Description:** CLIN 0005 - Software

**Paying Office:** DFAS-SL-FPV
P.O. Box 200009
St. Louis, MO 63120-0009

| MIPR Number | Form 9 Number | Fund Cite | Amount |
|---|---|---|---|
| MIPR0CICA00026 | F5DIFS93370101 | 2102040 5F 5F01 P654818 255Y 654818.C34.00.12.00 4AZZZ-( S28043 | $285,000.00 |
| Previous DO 5981 (Initial Lease) | | Delivery Order Total: | $285,000.00 |

**ORDERING INFORMATION FOR US Army CECOM**

| Technical Point of Contact | Financial Point of Contact | Not Used | Ship To Address |
|---|---|---|---|
| GS-15 Joseph Johnson<br>PEO Cmd, Ctrl, & Comm Systems<br>SFAE-C3S-HTI<br>Room 3C140C<br>Myer Center<br>Ft. Monmouth, NJ 07703 | GS-13 Pat Queck<br>PEO Cmd, Ctrl, & Comm Systems<br>SFAE-C3S-PMO<br>Room 3C140C<br>Myer Center<br>Ft. Monmouth, NJ 07703 | No Information Available | GS-15 Joseph Johnson<br>PEO Cmd, Ctrl, & Comm Systems<br>SFAE-C3S-HTI<br>Room 3C140C<br>Myer Center<br>Ft. Monmouth, NJ 07703 |
| **DSN Phone:** 987-2872<br>**Com Phone:** (732) 427-2872<br>**FAX:** (732) 427-8042<br>**E-Mail:** jjohnson@c3smail.monmouth.army.mi | **DSN Phone:** 987-3647<br>**Com Phone:** (732) 427-3674<br>**FAX:**<br>**E-Mail:** pqueck@c3smail.monmouth.army.mil | **DSN Phone:**<br>**Com Phone:**<br>**FAX:**<br>**E-Mail:** No E-mail address provided | **DSN Phone:** 987-2872<br>**Com Phone:** (732) 427-2872<br>**FAX:** (732) 427-8042<br>**E-Mail:** jjohnson@c3smail.monmouth.army.m |

**LOGICON POINTS OF CONTACT**
**(310) 831-0611**
**P.O. Box 471**
**222 West Sixth St.**
**San Pedro, CA 90733-0611**

Delivery Order Tracking
Ms. Joanna Stegall (Primary) Ext 2319
Mr. David Reid (Alternate) Ext 2825

Warranty and Technical Support
Ms. Joanna Stegall (Primary) Ext 2319
Mr. David Reid (Alternate) Ext 2825

US Army CECOM | CONTRACT NO. F01620-94-D-0002 | User ID: AR-007-002

| SLIN | Discount Code | Description | OEM | Quantity | Price | Cost |
|---|---|---|---|---|---|---|
| | | CLIN 0005 Software - All Contract Periods | | | | |
| Lease Pymt - Starburst | AT | Starburst Lease Payment | Starburst | 285000 | $1.00 | $285,000.00 |
| | | | US Army CECOM CLIN 0005 SUBTOTAL | | | $285,000.00 |
| | | | US Army CECOM TOTAL | | | $285,000.00 |

**LOGICON**

For questions please contact:
Jerry Soltis (703) 312-2082

ICASE Special Offer # 330 Rev 04
November 23, 1999

# Special Buy for ICASE Customers
## Starburst

| Line # | Qty | Product ID | Product Name | ICASE Unit Price | ICASE Extend Price |
|---|---|---|---|---|---|
| 01 | 60 | 131-WNT-0025 | Starburst OmniCast Server to Server license for up to 25 Server Targets (for Windows NT) | $15,818.00 | $949,080.00 |
| 02 | 60 | 131-MNT-0025 | Annual Support for Starburst OmniCast Server to Server license for up to 25 Server Targets (Solaris or Windows NT) | $2,996.00 | $179,760.00 |

| | |
|---|---|
| Price | $1,128,840.00 |
| Discount Off Total (15.4%) | $173,840.00 |
| **BASE Lease Offer Price (must be ordered by Oct 30 1999)****** | $100,000.00 |
| **OPTION 1 Lease Offer Price (must be ordered by Dec 01 1999)****** | $285,000.00 |
| **OPTION 2 Lease Offer Price (must be ordered by Dec 01 2000)****** | $285,000.00 |
| **OPTION 3 Purchase Offer Price (must be ordered by Dec 01 2000)****** | $285,000.00 |
| **Total** | $955,000.00 |

**Execution of the Base Lease Offer provides the customer with an interim use license.
Execution of Options 1 and 2 each provide the customer with one-year continuances of the interim license.
Upon execution of Option 3, the interim use license is converted into a perpetual use license.
If the customer fails to execute any of the options by the specified date, the interim license is terminated as specified in the terms and conditions.

### Special Offer Notes

1. This order is subject to Starburst standard 90-day warranty of performance including its ability to operate over NTDR radio devises.
2. The licenses purchased are valid for use by any DOD service or agency.
3. Outyear maintenance for the above licenses can be purchased as follows:
   Year 2 FY01 $143,820
   Year 3 FY02 $143,820
4. To exercise OPTION 3 Purchase Offer Price, a delivery order in the amount of $285,000.00 must be received by December 01, 2000, subject to availability of funds and fully funded no later than December 01, 2001. In order to exercise OPTION 3 the customer must have executed the BASE, OPTION 1 and OPTION 2 Lease OPTIONS.

### Attachments

Attachment 1: Leasing Terms and Conditions

ICASE Delivery Orders for this package must be placed by 10/20/99

**NORTHROP GRUMMAN - PROPRIETARY LEVEL 1**

Restrictions on Disclosure of Data Under the Freedom of Information Act Logicon, Inc, deems that this proposal contains data that is privileged and confidential under 5 U.S.C. 552. Accordingly, such data shall not be disclosed outside the Government and shall not be duplicated, used, or disclosed in whole or in part for any purpose other than to evaluate the proposal except as provided for in the following legend.

Restrictions on Disclosure and Use of Data (April 1984): If a contract is awarded to this offeror as a result of-or in connection with-the submission of this data, the Government shall have the right to duplicate, use, or disclose the data to the extent provided in the resulting contract. This restriction does not limit the Government's right to use information contained in this data if it is obtained from another source without restriction. The data subject to this restriction are contained in the sheets so marked

I-CASE Special Offer #330 Revision 4 Attachment 1

# LEASING TERMS AND CONDITIONS

**Statement**

These lease terms and conditions are hereby incorporated by reference in their entirety within the I-CASE Contract No. F01620-94-D-0002. The I-CASE Contract, applicable Delivery Order and these lease terms and conditions shall constitute the entire agreement between Logicon, Inc. ("Contractor") and the U.S. Government ("Government") relative to the CECOM Starburst lease transaction under the aforementioned contract. It is hereby mutually understood and agreed that as inducement for Contractor entering into this Agreement, the Government has provided required information relative to the essential use of the software Asset which includes, but is not limited to, a description of the currently identified applications to be supported and planned life-cycle operations for the leased software.

1. **Lease.**

(a) The Parties hereto understand and agree that the form of this Agreement is a lease. The Government shall not be obligated to continue performance during the full period of the lease, if pursuant to FAR 52.232-19, funding for the lease Asset and above-mentioned life-cycle operations is not appropriated and is, therefore, unavailable during any Government fiscal year applicable to the effective Lease Term. In addition, the Government shall be relieved from all obligations under the lease, if the Bona Fide Needs of the Government for the Asset cease to exist and such need is not fulfilled within the succeeding twelve (12) months, from the date of non-renewal/termination, with an Asset performing similar functions which the leased Asset was intended to perform.

(b) The Parties hereto expressly understand and agree that the Contractor and the Government shall not be obligated to take any action or perform any covenant under this lease agreement which is contrary to the Anti-Deficiency Act or Federal law. Accordingly, the lease Delivery Orders shall not be deemed to obligate succeeding fiscal year funds or otherwise commit the Government to continue performance beyond the current government fiscal year. The Government agrees to use its best efforts to annually obtain appropriated funds to support the lease under the applicable Delivery Order.

(c) The Contractor has relied on the specified lease term in order to derive the fair Lease Payment.

(d) The Starburst products identified in Special Offer #330 are priced and are being provided to the lessee as a single Asset. If the Government terminates the lease, termination will apply to the entire Delivery Order and not to individual products.

2. **Lease Payments.**

The Lease Payment Plan is shown in EXHIBIT A.

3. **Lease End**

Upon completion of the entire Lease Term, and full payment of all amounts set forth on Exhibit A "Lease Payment Plan", the Government, without taking further action or accepting further obligations, shall automatically receive a perpetual, fully paid-up license to use the Asset in this Special Offer.

4. **License Rights.**

License rights in software Asset shall vest in the Government upon Contractor's delivery to the Government and signing of the DD250 document. Upon return, for any reason, of the Asset to the Contractor, Government shall relinquish license rights to the Contractor. While license rights rest with the Government, the Contractor (or Contractor's Assignee) shall retain a first security interest in the Asset, and the Government shall sign such documentation as are necessary to perfect the Contractor's

(or Contractor's Assignee) security interest. The Government may not, without prior written approval from the Contractor: (1) transfer the leased Asset from the Air Force to another Government organization; or (2) "trade-in" the leased Asset for other assets.

5. Risk of Loss.

(a) Government is relieved from all risk of loss or damage to the Asset during periods of delivery. Government shall be responsible for any loss or damage to the Asset during the Lease Term. Government shall assume risk of loss or damage to the Asset during relocation unless Contractor shall undertake such relocation under a modification to the Delivery Order.

(b) If any Asset is damaged, Government shall promptly notify Contractor and shall, at Government's expense, within sixty (60) days of such damage, cause to be made such repairs as are necessary to return such Asset to its previous condition.

(c) In the event any media and documentation are destroyed, damaged beyond repair, lost, stolen, or taken by governmental action for the Lease Term, the Government and Contractor will negotiate reasonable cost for replacement of media and documentation.

6. Taxes.

As provided within the FAR, and notwithstanding the provision of FAR 52.212-4(k), FAR 52.229-1 shall apply to this lease agreement and is hereby incorporated by reference.

7. Care of Asset.

During the Lease Term, the Government shall continue maintenance support, as identified in I-CASE Special Offer #330.

8. Asset Additions

(i) The Lease Term for each Asset addition (excluding updates as provided in Special Offer 330) placed under the Delivery Order will be coterminous with the Lease Term applicable to the original Network License Asset. The price for the change or addition will take into account the remaining Lease Term of the existing Asset, the price of the change or addition requested and the Lease Term of the new Asset addition. The Delivery Order shall continue for its Lease Term and the Government shall issue a modification to the Delivery Order which sets forth the new Lease Payment.

(ii) The Asset addition Lease Payment will be calculated in accordance with the terms of the Contractor's "Special Offer" which will be presented to the Government detailing the additions and applicable lease payments.

9. Relocation.

The Government shall keep records of the location of the Software License, Software Master Media and Manuals (Collectively referred to as "Asset") and use best efforts to provide Contractor with thirty (30) days written notice of any intended relocation of the Asset. All expenses of the relocation shall be paid by Government including transportation and reinstallation at the new site. Lease Payments shall continue during the Government's relocation of the Assets.

10. Return of Asset.

Within thirty (30) days after the date of Termination for Convenience or non-renewal of the Delivery Order anticipated full Lease Term, the Government shall, at its own risk and expense, have the Asset packed for shipment in accordance with the Contractor's specifications and shall return the Asset to Contractor in the same condition as when delivered, ordinary wear and tear excepted. Upon request by the Government and at the Government's expense, Contractor shall assist in the de-installation and packing of Asset so terminated or non-renewed. Such services, if required, are outside the scope of this Agreement. Additionally, in the event of a termination or non-renewal prior to completion of the full Lease Term, the lessee shall, within thirty (30) days from the occurrence of such event: (1) cease using the Asset; (2) remove the Asset from all computers on which the Asset was installed; and (3) certify to the Contractor that usage of the Asset has been discontinued and that all copies of the Asset's media and documentation have been returned to the Contractor or destroyed.

**11. No Discount for Early Payment.**

No discount shall be applicable to early payment by the Government.

**12. Reserved.**

**13. Definitions.**

| | |
|---|---|
| Government/Lessee: | USArmy Communications Electronics Command (CECOM) |
| Contractor/Lessor: | Logicon, a wholly owned subsidiary of Northrop-Grumman Corp. |
| Contract: | I-CASE F01620-94-D-0002 |
| Delivery Order: | I-CASE Special Offer #330 and DO 5981 |
| Asset: | Starburst license as described in I-CASE Special Offer #330 |
| Lease Payment: | The periodic payment set forth in Delivery Order 5981 and Special Offer #330 |
| Lease Term: | The entire length of time for which the Asset is anticipated to be leased, as set forth in the Delivery Order. |
| Commencement Date | Date the Asset is shipped to the Government. |
| Acceptance: | Thirty-one (31) days from delivery of the Asset. |
| First Lease Payment Due Date: | Thirty (30) days after receipt of invoice. |
| End of Lease Term Option: | As specified in EXHIBIT A |

**14. Financing Statements.**

Government agrees, upon Contractor's request, to execute and deliver to Contractor any reasonable financing statements, fixture filings or other instruments necessary for expedient filing, recording or perfecting the interest and title of Contractor in this Agreement and the Asset. Government agrees that where permitted by law, a copy of this Agreement may be filed in lieu of a financing statement.

**15. Purchase Option.**

The Government has the right to purchase the Asset. The purchase price will be calculated in the amount, and on the date, stated in Exhibit A, entitled "Purchase Option". The Government agrees to use its best efforts to provide reasonable advance written notice to the Contractor in the event of such purchase.

# EXHIBIT A
# SCHEDULE

1. **Lease Payment Plan (Strictly for Planning Purposes):**

| Payment Number | Order Due Date | Payment Amount |
|---|---|---|
| 1 | 10/14/1999 | $100,000.00 |
| 2 | 12/01/1999 | $285,000.00 |
| 3 | 12/01/2000 | $285,000.00 |
| 4* (or Purchase Option Payment No. 4) | 12/01/2000 | $285,000.00 |

2. **Purchase Option:**

| In lieu of Payment Number | Title Acquisition Due Date | Title Acquisition Amount |
|---|---|---|
| 1 | 10/14/1999 | $856,000.00 |
| 2 | 12/01/1999 | $805,287.00 |
| 3 | 12/01/2000 | $570,000.00 |
| 4** | 12/01/2000 | $285,000.00 |

Notes:

* Delivery Order for Payment No. 4 must be received by December 01, 2000, with the funding subject to availability of funds and fully funded no later than December 01, 2001.

**To exercise the purchase option 4 Payment, a delivery order in the amount of $285,000.00 must be received by December 01, 2000, with the funding subject to availability of funds and fully funded no later than December 01, 2001. This option can not be executed unless lease payments 1, 2, and 3 have also been executed.

DEC. 3.1999 1:50PM ICASE PROGRAM OFFICE NO.474 P.1

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: J - FFP
PAGE OF PAGES: 1 of 2

2. AMENDMENT/MODIFICATION NO.: 01
3. EFFECTIVE DATE: 1999 DEC 03
4. REQUISITION/PURCHASE REQ. NO.:
5. PROJECT NO. (If applicable):

6. ISSUED BY: HQ SSG/PKS CODE: FA8771

DEPARTMENT OF THE AIR FORCE
HQ SSG/PK (I-CASE PROGRAM)
85 HODGES AVENUE SO, BLDG 403
MAFB-GUNTER ANNEX AL 36114-3207
TERESA HARRIS 334-416-2333
Teresa.Harris@Gunter.AF.mil

7. ADMINISTERED BY (If other than Item 6) CODE: FA8771

STANDARD SYSTEMS GROUP/I-CASE
DIRECTORATE OF CONTRACTING/PKS-4
85 HODGES AVENUE SO BLDG 403
MAFB-GUNTER ANNEX AL 36114-3004

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

LOGICON, INC.
222 W SIXTH ST - PO BOX 471
SAN PEDRO CA 90733-0471
(310) 831-0611

CODE: 58474 FACILITY CODE:

(X) 9A. AMENDMENT OF SOLICITATION NO.:
9B. DATED (SEE ITEM 11):
X 10A. MODIFICATION OF CONTRACT/ORDER NO.: F01620-94-D-0002 5981
10B. DATED (SEE ITEM 13): 20 OCT 1999

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATION OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (X) | | |
|---|---|---|
| | A. | THIS CHANGE ORDER IS ISSUED PURSUANT TO: ( ) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. ITEM 10A. |
| | B. | THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. | THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 43.103(A)(3) - AGREEMENT OF THE PARTIES |
| | D. | OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

POC: T. HARRIS
PH: 334-416-2333

SEE SCHEDULE

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print): John del Bando Sr. Contracts Administrator
16A. NAME AND TITLE OF SIGNER (Type or print): TERESA HARRIS

15B. CONTRACTOR/OFFEROR: [signature] (Signature of person authorized to sign)
15C. DATE SIGNED: 03 Dec 99
16B. UNITED STATES OF AMERICA BY [signature] (Signature of Contracting Officer)
16C. DATE SIGNED: 03 Dec 99

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE
ConWrite Version 3.30

30-105

STANDARD FORM 30 (REV.10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

MODS PO # 5981

App. 122

received 12-8-99

000124

14A. The purposes of this modification 01 to DO 5981 are, as follows:

Replace Attachment 2, pages 1 through 5, I-CASE Special Offer #330 Revision 3 including the Leasing Terms and Conditions by Attachment 2, pages 1 through 5, I-CASE Special Offer #330 Revision 4 including the Leasing Terms and Conditions, of this modification 01 to DO 5981, due to a change to Exhibit A to call out Lease Payment No. 4, which was inadvertently omitted from the Special Offer.

14B. The total amount obligated ($100,000.00) for this delivery order remains unchanged.

14C. The delivery date and period of performance remains unchanged.

14D. This modification 01 consists of:

1) the Standard Form and one continuation page,

2) Revised Attachment 2: I-CASE Special Offer # 330 Revision 04 of 23 Nov 99, entitled "Special Buy for ICASE Customers Starburst", including "LEASING TERMS AND CONDITIONS." (4 pages). [Note that the Leasing Terms and Conditions noted as attached to I-CASE Special Offer # 330 Revision 04 have been incorporated into the I-CASE contract as Attachment 1 of Annex AT of Attachment 26 (see modification P00227).]

14E. This Supplemental Agreement constitutes full, complete, and final settlement of any and all rights the contractor has to an equitable adjustment, including any and all interest, pursuant to either the "Changes" clause or any other provision of the contract, arising out of or relating to the changes implemented by this Supplemental Agreement.

All other terms and conditions remain unchanged and in full force and effect.

replaces Provision 3
Added Provision
attached
For Attachment 2:
* Does not AFFECT Attachment

**LOGICON**

For questions please contact:
Jerry Soltis (703) 312-2082

ICASE Special Offer # 330 Rev 04
November 23, 1999

# Special Buy for ICASE Customers
# Starburst

| Line # | Qty | Product ID | Product Name | ICASE Unit Price | ICASE Extend Price |
|---|---|---|---|---|---|
| 01 | 60 | 131-WNT-0025 | Starburst OmniCast Server to Server license for up to 25 Server Targets (for Windows NT) | $15,818.00 | $949,080.00 |
| 02 | 60 | 131-MNT-0025 | Annual Support for Starburst OmniCast Server to Server license for up to 25 Server Targets (Solaris or Windows NT) | $2,996.00 | $179,760.00 |

option 1 Lease Chosen per Order 6022

| | |
|---|---|
| Price | $1,128,840.00 |
| **Discount Off Total (15.4%)** | **$173,840.00** |
| **BASE Lease Offer Price (must be ordered by Oct 30 1999)**** | **$100,000.00** |
| **OPTION 1 Lease Offer Price (must be ordered by Dec 01 1999)**** | **$285,000.00** |
| **OPTION 2 Lease Offer Price (must be ordered by Dec 01 2000)**** | **$285,000.00** |
| **OPTION 3 Purchase Offer Price (must be ordered by Dec 01 2000)**** | **$285,000.00** |
| Total | **$955,000.00** |

**Execution of the Base Lease Offer provides the customer with an interim use license.
Execution of Options 1 and 2 each provide the customer with one-year continuances of the interim license.
Upon execution of Option 3, the interim use license is converted into a perpetual use license.
If the customer fails to execute any of the options by the specified date, the interim license is terminated as specified in the terms and conditions.

## Special Offer Notes

1. This order is subject to Starburst standard 90-day warranty of performance including its ability to operate over NTDR radio devises.
2. The licenses purchased are valid for use by any DOD service or agency.
3. Outyear maintenance for the above licenses can be purchased as follows:
   Year 2 FY01 $143,820
   Year 3 FY02 $143,820
4. To exercise OPTION 3 Purchase Offer Price, a delivery order in the amount of $285,000.00 must be received by December 01, 2000, subject to availability of funds and fully funded no later than December 01, 2001. In order to exercise OPTION 3 the customer must have executed the BASE, OPTION 1 and OPTION 2 Lease OPTIONS.

## Attachments

Attachment 1: Leasing Terms and Conditions

ICASE Delivery Orders for this package must be placed by 10/20/99

**NORTHROP GRUMMAN - PROPRIETARY LEVEL 1**

Restrictions on Disclosure of Data Under the Freedom of Information Act Logicon, Inc. deems that this proposal contains data that is privileged and confidential under 5 U.S.C. 552. Accordingly, such data shall not be disclosed outside the Government and shall not be duplicated, used, or disclosed in whole or in part for any purpose other than to evaluate the proposal except as provided for in the following legend.

*Restrictions on Disclosure and Use of Data (April 1984): If a contract is awarded to this offeror as a result of-or in connection with-the submission of this data, the Government shall have the right to duplicate, use, or disclose the data to the extent provided in the resulting contract. This restriction does not limit the Government's right to use information contained in this data if it is obtained from another source without restriction.*

F01620-94-D-0002/598101
ATCH 2
PAGE 1 OF 5

I-CASE Special Offer #330 Revision 4 Attachment 1

# LEASING TERMS AND CONDITIONS

**Statement**

These lease terms and conditions are hereby incorporated by reference in their entirety within the I-CASE Contract No. F01620-94-D-0002. The I-CASE Contract, applicable Delivery Order and these lease terms and conditions shall constitute the entire agreement between Logicon, Inc. ("Contractor") and the U.S. Government ("Government") relative to the CECOM Starburst lease transaction under the aforementioned contract. It is hereby mutually understood and agreed that as inducement for Contractor entering into this Agreement, the Government has provided required information relative to the essential use of the software Asset which includes, but is not limited to, a description of the currently identified applications to be supported and planned life-cycle operations for the leased software.

**1. Lease.**

(a) The Parties hereto understand and agree that the form of this Agreement is a lease. The Government shall not be obligated to continue performance during the full period of the lease, if pursuant to FAR 52.232-19, funding for the lease Asset and above-mentioned life-cycle operations is not appropriated and is, therefore, unavailable during any Government fiscal year applicable to the effective Lease Term. In addition, the Government shall be relieved from all obligations under the lease, if the Bona Fide Needs of the Government for the Asset cease to exist and such need is not fulfilled within the succeeding twelve (12) months, from the date of non-renewal/termination, with an Asset performing similar functions which the leased Asset was intended to perform.

(b) The Parties hereto expressly understand and agree that the Contractor and the Government shall not be obligated to take any action or perform any covenant under this lease agreement which is contrary to the Anti-Deficiency Act or Federal law. Accordingly, the lease Delivery Orders shall not be deemed *to obligate succeeding fiscal year funds or otherwise commit the Government to continue performance* beyond the current government fiscal year. The Government agrees to use its best efforts to annually obtain appropriated funds to support the lease under the applicable Delivery Order.

(c) The Contractor has relied on the specified lease term in order to derive the fair Lease Payment.

(d) The Starburst products identified in Special Offer #330 are priced and are being provided to the lessee as a single Asset. If the Government terminates the lease, termination will apply to the entire Delivery Order and not to individual products.

**2. Lease Payments.**

The Lease Payment Plan is shown in EXHIBIT A.

**3. Lease End**

Upon completion of the entire Lease Term, and full payment of all amounts set forth on Exhibit A "Lease Payment Plan", the Government, without taking further action or accepting further obligations, shall automatically receive a perpetual, fully paid-up license to use the Asset in this Special Offer.

**4. License Rights.**

License rights in software Asset shall vest in the Government upon Contractor's delivery to the Government and signing of the DD250 document. Upon return, for any reason, of the Asset to the Contractor, Government shall relinquish license rights to the Contractor. While license rights rest with the Government, the Contractor (or Contractor's Assignee) shall retain a first security interest in the Asset, and the Government shall sign such documentation as are necessary to perfect the Contractor's

(or Contractor's Assignee) security interest. The Government may not, without prior written approval from the Contractor: (1) transfer the leased Asset from the Air Force to another Government organization; or (2) "trade-in" the leased Asset for other assets.

5. **Risk of Loss.**

(a) Government is relieved from all risk of loss or damage to the Asset during periods of delivery. Government shall be responsible for any loss or damage to the Asset during the Lease Term. Government shall assume risk of loss or damage to the Asset during relocation unless Contractor shall undertake such relocation under a modification to the Delivery Order.

(b) If any Asset is damaged, Government shall promptly notify Contractor and shall, at Government's expense, within sixty (60) days of such damage, cause to be made such repairs as are necessary to return such Asset to its previous condition.

(c) In the event any media and documentation are destroyed, damaged beyond repair, lost, stolen, or taken by governmental action for the Lease Term, the Government and Contractor will negotiate reasonable cost for replacement of media and documentation.

6. **Taxes.**

As provided within the FAR, and notwithstanding the provision of FAR 52.212-4(k), FAR 52.229-1 shall apply to this lease agreement and is hereby incorporated by reference.

7. **Care of Asset.**

During the Lease Term, the Government shall continue maintenance support, as identified in I-CASE Special Offer #330.

8. **Asset Additions**

(i) The Lease Term for each Asset addition (excluding updates as provided in Special Offer 330) placed under the Delivery Order will be coterminous with the Lease Term applicable to the original Network License Asset. The price for the change or addition will take into account the remaining Lease Term of the existing Asset, the price of the change or addition requested and the Lease Term of the new Asset addition. The Delivery Order shall continue for its Lease Term and the Government shall issue a modification to the Delivery Order which sets forth the new Lease Payment.

(ii) The Asset addition Lease Payment will be calculated in accordance with the terms of the Contractor's "Special Offer" which will be presented to the Government detailing the additions and applicable lease payments.

9. **Relocation.**

The Government shall keep records of the location of the Software License, Software Master Media and Manuals (Collectively referred to as "Asset") and use best efforts to provide Contractor with thirty (30) days written notice of any intended relocation of the Asset. All expenses of the relocation shall be paid by Government including transportation and reinstallation at the new site. Lease Payments shall continue during the Government's relocation of the Assets.

10. **Return of Asset.**

Within thirty (30) days after the date of Termination for Convenience or non-renewal of the Delivery Order anticipated full Lease Term, the Government shall, at its own risk and expense, have the Asset packed for shipment in accordance with the Contractor's specifications and shall return the Asset to Contractor in the same condition as when delivered, ordinary wear and tear excepted. Upon request by the Government and at the Government's expense, Contractor shall assist in the de-installation and packing of Asset so terminated or non-renewed. Such services, if required, are outside the scope of this Agreement. Additionally, in the event of a termination or non-renewal prior to completion of the full Lease Term, the lessee shall, within thirty (30) days from the occurrence of such event: (1) cease using the Asset; (2) remove the Asset from all computers on which the Asset was installed; and (3) certify to the Contractor that usage of the Asset has been discontinued and that all copies of the Asset's media and documentation have been returned to the Contractor or destroyed.

**11. No Discount for Early Payment.**

No discount shall be applicable to early payment by the Government.

**12. Reserved.**

**13. Definitions.**

| | |
|---|---|
| Government/Lessee: | USArmy Communications Electronics Command (CECOM) |
| Contractor/Lessor: | Logicon, a wholly owned subsidiary of Northrop-Grumman Corp. |
| Contract: | I-CASE F01620-94-D-0002 |
| Delivery Order: | I-CASE Special Offer #330 and DO 5981 |
| Asset: | Starburst license as described in I-CASE Special Offer #330 |
| Lease Payment: | The periodic payment set forth in Delivery Order 5981 and Special Offer #330 |
| Lease Term: | The entire length of time for which the Asset is anticipated to be leased, as set forth in the Delivery Order. |
| Commencement Date | Date the Asset is shipped to the Government. |
| Acceptance: | Thirty-one (31) days from delivery of the Asset. |
| First Lease Payment Due Date: | Thirty (30) days after receipt of invoice. |
| End of Lease Term Option: | As specified in EXHIBIT A |

**14. Financing Statements.**

Government agrees, upon Contractor's request, to execute and deliver to Contractor any reasonable financing statements, fixture filings or other instruments necessary for expedient filing, recording or perfecting the interest and title of Contractor in this Agreement and the Asset. Government agrees that where permitted by law, a copy of this Agreement may be filed in lieu of a financing statement.

**15. Purchase Option.**

The Government has the right to purchase the Asset. The purchase price will be calculated in the amount, and on the date, stated in Exhibit A, entitled "Purchase Option". The Government agrees to use its best efforts to provide reasonable advance written notice to the Contractor in the event of such purchase.

I-CASE Special Offer #330 Revision 4

Attachment 1

Payment Number 4** of Purchase option Payment No. 4 IS NEW PART OF MOD

* Order Due Date same

# EXHIBIT A
# SCHEDULE

1. Lease Payment Plan (Strictly for Planning Purposes):

| Payment Number | Order Due Date | Payment Amount |
|---|---|---|
| 1 | 10/14/1999 | $100,000.00 |
| 2 | 12/01/1999 | $285,000.00 |
| 3 | 12/01/2000 | $285,000.00 |
| 4* (or Purchase Option Payment No. 4) | 12/01/2000 | $285,000.00 |

2. Purchase Option:

| In lieu of Payment Number | Title Acquisition Due Date | Title Acquisition Amount |
|---|---|---|
| 1 | 10/14/1999 | $856,000.00 |
| 2 | 12/01/1999 | $805,287.00 |
| 3 | 12/01/2000 | $570,000.00 |
| 4** | 12/01/2000 | $285,000.00 |

Notes:

* Delivery Order for Payment No. 4 must be received by December 01, 2000, with the funding subject to availability of funds and fully funded no later than December 01, 2001.

**To exercise the purchase option 4 Payment, a delivery order in the amount of $285,000.00 must be received by December 01, 2000, with the funding subject to availability of funds and fully funded no later than December 01, 2001. This option can not be executed unless lease payments 1, 2, and 3 have also been executed.



LOGICON PROPRIETARY – LIMITED DISTRIBUTION