IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NORTHROP GRUMMAN<br>INFORMATION TECHNOLOGY, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-595C |
| THE UNITED STATES, | ) | (Senior Judge Smith) |
| Defendant. | ) | |

**DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court enter summary judgment in our favor and deny plaintiff's motion for summary judgment because there are no genuine issues of material fact in this case and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon plaintiff's pleadings, our brief, and the accompanying Proposed Findings of Uncontroverted Facts.

I. Nature Of The Case

This case involves the lease of software that the Army intended to use as a component of a battle management system. The software, the Starburst Omnicast software ("the Omnicast software"), was intended to be used as a means of transmitting data in a battlefield environment using a "revolutionary" technological method.

Shortly after it received the Omnicast software, the Army began testing it and encountered several problems affecting is viability for continued use. Starburst promised to remedy these problems in future software updates, but the company was purchased by another corporation and the new company declined to provide additional software updates and

announced that it would withdraw all support for the Omnicast software within a year. At this point, judging that the Omnicast software had lost all practical use, the Army decided it had no choice but to utilize a different software solution for its battlefield management system. The Army, accordingly, declined to further renew its lease. Plaintiff, Northrop Grumman Informtation Technology, Inc. ("NGIT") moves for summary judgment upon the basis that the Army allegedly breached a warranty contained within an "essential use" letter because the Omnicast software was not actually essential to the Army battle management system.

II. Statement of Facts

For our statement of facts, we respectfully refer the Court to the accompanying Proposed Findings of Uncontroverted Facts.

## LAW AND ARGUMENT

Judgment should be entered for the Government and denied for NGIT for three reasons: First, this lawsuit is barred by the statute of limitations because a claim setting forth the basis of the suit was denied more than a year prior to the filing of this lawsuit. Second, the Army had the contractual right to cancel the lease because its bona fide need for the Omnicast software evaporated when the software turned out to be flawed and Starburst's new parent company declined to provide the further support necessary to remedy those flaws. Finally, NGIT's motion for summary judgment should be denied because no warranty was incorporated into the contract and NGIT was aware of the purposes and uses to which the software was to be utilized, so the Army would have broken no warranty in any event.

I. Standards for Summary Judgment

The familiar standards of summary judgment need only a brief re-statement here. The procedure of summary judgment is properly regarded not as a disfavored shortcut, but rather as an integral part of the Court rules as a whole, designed to secure a just, speedy and inexpensive determination of every action. Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); accord Sweats Fashions, Inc. v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987). "The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied 361 U.S. 843 (1959). Stated differently, only disputes over facts that might affect the outcome of a suit will properly prevent an entry of judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

II. This Lawsuit Is Precluded By The Statute Of Limitations

A. A Lawsuit Pursuant To The Contract Disputes Act Must Be Filed Within A Year Of The Denial Of The Relevant Claim By The Contracting Officer

It is well-established that an action challenging a contracting officer's final decision must be brought in the Court of Federal Claims within a year of the decision. 41 U.S.C. § 609 (a)(3); Borough of Alpine v. United States, 923 F.2d 170, 172 (Fed. Cir. 1991).

B. The Claim Was Denied More Than A Year Before This Lawsuit Was Filed

It is undisputed that, purporting to act for Logicon's corporate successor-in-interest, Mr. DelBando, filed a certified claim with the contracting officer on June 12, 2002 and the contracting officer denied it on December 10, 2002. This lawsuit was filed on June 3, 2005 – plainly, more than a year after denial of the claim in 2002. Thus, the case should be dismissed for failure to comply with the statute of limitations.

We anticipate that NGIT will assert that its first claim was not properly before the contracting officer because it was brought by the wrong entity (Northrop Grumman Computing Systems as opposed to NGIT) and that the only claim brought by the proper claimant was denied on June 2, 2005, making this suit timely. Although the Government entertained doubts about the proper claimant earlier in this litigation and during the first lawsuit, the uncontroverted evidence supports a finding that the 2002 claim was properly submitted. In support of the argument that the first claim was properly submitted is the certified claim itself, in which Mr. DelBando certified that his employer, Northrop Grumman Computing Systems was formerly Logicon, Inc. See App. 13-14.[1] Moreover, Mr. DelBando was plainly, originally an employee of Logicon. His signature may be found upon the 1999 amendments to the contract which created the lease between Logicon and the Army. App. 122, 129, 130. Our proposed findings of uncontroverted facts further demonstrate that Logicon was a part of Northrop Grumman Computer Systems at the time of the 2002 claim. DPFUF 14.[2] This is consistent with the letterhead upon the 2002 claim, which reflects both NGIT and Northrop Grumman Computing Systems (Northrop Grumman Computing Systems being subsidiary to NGIT). App. 13. Plainly, at the time of the 2002 claim, Northrop Grumman Computing Systems was Logicon's successor or Logicon by another name. Accordingly, the 2002 claim was properly submitted and was properly denied on December 10, 2002. NGIT's 2005 lawsuit was filed well outside of the statute of limitations and must be dismissed.

## III. The Army Was Within Its Rights To Discontinue The Lease

---

[1] "App. __" refers to a page of the appendix filed by plaintiff along with its "Proposed Finding of Uncontroverted Fact."

[2] "DPFUF__" refers to a paragraph of "Defendant's Proposed Finding Of Uncontroverted Facts," filed separately today.

The terms of the lease at issue in this case relieved the Army of its obligation to continue performing upon it when, as happened here, the Omnicast software ceased fulfilling a bona fide Army need.

A. The Army Was Relieved Of Its Obligations Under The Lease If Its Needs For The Software Ceased

The contractual language relieving the Army of its obligations to continue upon the lease when it lost its bona fide need for the software, is straightforward. The salient contract clause provides, in relevant part, that:

> . . . the Government shall be relieved from all obligations under the lease, if the Bona Fide Needs of the Government for the Asset cease to exist and such need is not fulfilled within the succeeding twelve (12) months, from the date of nonrenewal/termination, with another Asset performing similar functions which the leased Asset was intended to perform.

App. 95.

B. The Army Lost Its Bona Fide Needs For The Omnicast Software

As Mr. Johnson's declaration makes clear, and NGIT generally agrees, see PPFUF 9,[3] the flaws in the Omnicast software, combined with Starburst's withdrawal of support for it and its decision to cease updating it, made the Omnicast software valueless to the Army. Johnson Dec. 8-10.[4] To put it bluntly, the Army had no bona fide need for now-useless software. Johnson Dec. 10. Moreover, the Army never obtained any other software asset using the "revolutionary" data transmission method promised by the Omnicast software. Id. Accordingly, the preconditions for releasing the Army from its lease obligations were met and the Army was

---

[3] "PPFUF__" refers to a paragraph of plaintiff's "Proposed Finding of Uncontroverted Fact."

[4] "Johnson Dec. __" refers to a paragraph of Mr. Johnson's declaration, filed with "Defendant's Proposed Finding Of Uncontroverted Facts."

within its rights to discontinue the lease.

IV. The Army Breached No Warranty To NGIT

NGIT alleges that the "letter of essential need," signed by Mr. Johnson at Logicon's behest, constitutes a warranty and that the alleged breach of that warranty requires the Army to pay damages to it. Pl. Mot. 8-9.[5] This argument fails because the letter was not a part of the contract and thus not a warranty; the unambiguous text of the contract made clear that the Army's needs for the software might change; NGIT was given ample information that the use of the Omnicast software was provisional; and, finally, nothing in the "letter of essential need" was inconsistent with what later transpired.

A. The Letter Of Essential Need Is Not A Warranty

NGIT rightly recognizes that Mr. Johnson's signature upon the "letter of essential need" is not sufficient to turn it into a warranty because he possessed no contracting authority and that only the contracting officer possessed that authority. Pl. Mot. 9. NGIT thus attempts to assert that the contracting officer incorporated the "letter of essential need" by reference. See id. This effort fails because the cited language in the lease does not meet the requirements for incorporation by reference of the "letter of essential need."

To be effective, "[i]ncorporation by reference requires a reference in one document to the terms of another. Moreover, the incorporating document must not only refer to the incorporated document, it must bring the terms of the incorporated document into itself as if fully set out." Sucesion J. Serralles, Inc. v. United States, 46 Fed. Cl. 773, 785 (2000) (citations omitted). As this Court explained:

[5] "Pl. Mot__" refers to pages of the "Memorandum Of Plaintiff In Support Of Motion For Summary Judgment" filed earlier in this case.

> Incorporation by reference requires, as the phrase suggests, a reference in one document to the terms of the other. More importantly, however, the incorporating document must not only refer to the incorporated document, it must, fairly construed, bring the terms of the incorporated document into itself as if fully set out.

Firth Constr. Co., Inc. v. United States, 36 Fed. Cl. 268, 275 (1996). The contract terms that NGIT asserts incorporate the "letter of essential need" into the lease as a warranty do not meet this test. First, there is no clear identification of the "letter of essential need" in the lease contract. See App. 95. Instead, the document refers to "information" that "the Government has provided." Id. This language does not even specify that the "information" was provided in a document, as opposed to the verbal discussions that Mr. Johnson had with NGIT, also describing the Army's intentions. See Johnson Dec. 7. Moreover, nothing in the lease in any way purports to "bring the terms of the incorporated document into itself as if fully set out." Seralles, 46 Fed. Cl. at 785. The contracting officer thus could not have obligated the Army to an alleged warranty in the "letter of essential need" because the "information" allegedly provided by the Government is so inadequately described and indefinite that the letter and "information" cannot have been incorporated by reference. By contrast, we direct the Court's attention to page 86 of plaintiff's appendix, demonstrating the level of specificity used by the parties when they sought to incorporate documents by reference into the contract. Accordingly, the "letter of essential need" cannot constitute a binding warranty.

B. The Unambiguous Text Of The Lease Provided That The Army's Needs For The Software Could Change

As discussed in Section III A, above, the lease contained a provision that excused the Army from "all obligations under the lease if the Bona Fide Needs of the Government for the Asset cease to exist." App. 95. As we understand NGIT's argument upon the alleged breach of warranty, the Army broke its warranty by not relying as heavily upon the Omnicast software as NGIT claims it expected. See Pl. Mot. 9. However, by relieving the Government of its obligations under the lease in the event that its bona fide needs changed, the lease plainly put NGIT upon notice that the Army's reliance was not without limit. Thus, the lease cannot be said to warrant that the Government's needs for the Omnicast software could not or would not change.

C. Mr. Johnson Accurately Explained The Army's Planned Uses Of The Omnicast Software To NGIT

In the event that the Court were to find that the lease language incorporated a warranty by reference, it would necessarily include all "information" that "the Government provided." App. 95. Mr. Johnson's discussions with NGIT and the "information" provided by virtue of the size of the order made clear that the Omnicast software acquisition here was for developmental purposes. Johnson Dec. 7. To the extent that NGIT alleges that the Army promised a different use, not subject to cancellation, it is contradicted by the additional oral information given by Mr. Johnson.

D. The "Letter Of Essential Need" Was Not Inaccurate

We finally note that, even if, the Court were to determine that the "letter of essential need" had been incorporated into the lease as a warranty and the Court were not to consider the other "information" provided by the Army to Logicon, a fair reading of the "letter of essential

need" would, nevertheless, demonstrate that its representations were accurate, thus no alleged warranty contained therein could have been breached.

First, we note that the letter was drafted by Logicon, not by Mr. Johnson or the Army. Thus, any ambiguity must be interpreted in favor of the Army. E.g., Metric Constructors, Inc. v. NASA, 169 F.3d 747, 751 (Fed. Cir. 1991) (noting doctrine of contra preferendum). Under this standard, each of the two material sentences in the "letter of essential need" may be easily read to have been accurate.

The first sentence in paragraph 2 of the "letter of essential need" is the statement that "PEO C3S has decided to enter into a lease agreement for the Starburst database products to support ABCS 6.0 and beyond." App. 84. NGIT does not allege that the Army did not decide to enter into the lease agreement or that the Starburst products were not "in support" of the ABCS 6.0 system. That was precisely why the Omnicast software was acquired. Johnson Dec. 4. Thus, this sentence is accurate.

The second sentence of paragraph 2 was likewise accurate. That sentence states that, "These products are essential to the operation of ABCS 6.0 as they are integral to the system." App. 84. NGIT cannot deny that software (such as the Omnicast software) which transmitted data was essential to the ABCS 6.0 system and integral to it. See Johnson Dec. 3. NGIT may be arguing that the "letter of essential need" indicates that only the Omnicast software could meet the need in ABCS 6.0, but the "letter of essential need" does not make such a sweeping statement. For example, the particular steering wheel on a car may be essential to its operation and integral to it, but that does not mean that another steering wheel or means of steering could not be used if the first one proved unsuitable. Perhaps Logicon read the meaning of its document differently, but the interpretation herein is certainly permissible and certainly consistent with the

facts. If the "letter of essential need" were to be construed as a warranty, it was not breached by the Army.

## CONCLUSION

NGIT's complaint should be dismissed for its failure to comply with the statute of limitations. Moreover, the uncontroverted facts demonstrate that the Army's decision to terminate its lease was countenanced by the language of that lease and the Army breached no warranty. Accordingly, we respectfully request that the Court grant the Government's cross-motion for summary judgement and deny plaintiff's motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7586
Fax: (202) 514-7969

Attorneys for Defendant

December 20, 2006