IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-595C |
| | ) | |
| THE UNITED STATES, | ) | (Senior Judge Smith) |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDING OF UNCONTROVERTED FACTS**

Pursuant to Rule 56(d)(1) of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact in support of its Cross-Motion for Summary Judgment.

1. In early 1999, Mr. Joseph Johnson, the Chief of the Horizontal Technology Integration Office at Fort Monmouth, New Jersey, was approached by a salesman from Starburst Software, who told him about a software product his company sold called "Omnicast." Johnson Dec. 4.[1] Omnicast promised a "revolutionary" technological means of sending information to multiple recipients while using less "bandwidth" than conventional transmission protocols. Id.

2. Mr. Johnson believed that the Omnicast software could be used for the Army Battle Command System ("ABCS") and decided to obtain a limited amount of the software to utilize in development of the ABCS. Johnson Dec. 4.

3. Mr. Johnson discussed this intended use with Mr. O'Brien, who indicated that he understood. Johnson Dec. 4.

4. Mr. O'Brien suggested to Mr. Johnson that the Army use a pre-existing Air Force

[1] "Johnson Dec. __" refers to a paragraph of Mr. Johnson's declaration, which is attached to this filing.

contract with Logicon, Inc. to procure the Omnicast software. Johnson Dec. 5. Mr. Johnson and Logicon agreed to this procurement method. Id. The parties also agreed that the Army would lease the software, with a lease involving an initial term and three option years. PPFUF 1.[2]

5. Mr. DelBando from Logicon provided Mr. Johnson a "letter of essential need" (see App. 84[3]) and asked him to sign it in order to aid in obtaining the lease. Johnson Dec. 7. He agreed. Id. Mr. Johnson did not personally draft this letter, nor did anybody from the Government. Id. In none of his conversations with Mr. O'Brien or Mr. DelBando did Mr. Johnson ever assert that the Omnicast software was guaranteed to be used in the ABCS; rather, he made clear to both Mr. O'Brien and Mr. DelBando that the Army was still at the research and development stage and merely hoped that the Omnicast software could be used as an integral part of the ABCS if it proved successful in its testing. Id.

6. The Air Force effected the lease by issuing an order against Logicon's I-Case contract. PPFUF 2. An attachment to the order sets forth the lease's terms and conditions and may be found at pages 95 to 97 of plaintiff's appendix. App. 95-97.

7. Page 1 of the "Leasing Terms And Conditions" provides, in part, under the heading, "Statement":

> It is hereby mutually understood and agreed that as inducement for Contractor entering into this Agreement, the Government has provided required information relative to the essential use of the software Asset which includes, but is not limited to, a description of the currently identified applications to be supported and planned

[2] "PPFUF__" refers to a paragraph of plaintiff's "Proposed Finding Of Uncontroverted Fact," filed earlier in this case.

[3] "App. __" refers to a page of the appendix filed by plaintiff along with its "Proposed Finding Of Uncontroverted Fact."

life-cycle operations for the leased software.

App. 95. Nowhere in the document is the "requested information" provided by the Government actually specified. App. 95-97.

8. The next paragraph of the "Leasing Terms And Conditions" provides, in part:

> . . . the Government shall be relieved from all obligations under the lease, if the Bona Fide Needs of the Government for the Asset cease to exist and such need is not fulfilled within the succeeding twelve (12) months, from the date of nonrenewal/termination, with another Asset performing similar functions which the leased Asset was intended to perform.

App. 95.

9. The Army took delivery of the Omnicast software in late 1999 and made its initial lease payment and first option year payment. Comp. 9, 11;[4] App. 13.

10. When the Army tested the Omnicast software in the battlefield conditions in which it was to be used, it encountered significant performance problems. Johnson Dec. 8. If these problems could not be remedied, the software would be useless for its intended use. Id. Starburst recognized the problems and promised to remedy them in future releases of the Omnicast software. Id.

11. Before the software deficiencies could be remedied, Starburst was acquired by another company which declined to provide more than one more year of support to the Omnicast software and which stated that it would issue no new Omnicast software updates. Johnson Dec. 9; App. 303, 304.

12. Under these circumstances, the Army had no further need for the Omnicast software which it had procured through Logicon because it was useless for either research and

---

[4] "Comp. __" refers to a paragraph of plaintiff's complaint in this case.

development or any further use in the ABCS. Johnson Dec. 9-10.

13. The Army then declined to renew the lease for the Omnicast software, uninstalled it, and offered to return it to Logicon. Johnson Dec. 10. The Army obtained no other software utilizing the "revolutionary" Omnicast data transmission method. Id.

14. At the time that the parties entered the lease at issue here, Logicon was a wholly owned subsidiary of Northrop Grumman Corporation. App. 173. Logicon underwent some name changes and was Northrop Grumman Information Technology Computer Systems. App. 285 ("Northrop Grumman Computing Systems is . . . Logicon plus another corporation called FDC."); D. App. 2-3[5] ("So Northrop Grumman acquired . . . Logicon. So they determined because of our business model . . . that they would attach us or make us part of Computing Systems. . . Logicon . . . became . . . a part of Northrop Grumman Computing Systems.")

15. On June 12, 2002, on behalf of Northrop Grumman Computing Systems, Mr. John DelBando submitted a certified claim, alleging that the Army had breached its lease agreement by failing to make payments for the last two years. App. 13-14.

16. The contracting officer denied the claim submitted by Mr. DelBando on December 10, 2002. Comp. 1.

17. Northrop Grumman Information Technology submitted a new claim, "alleging essentially the same facts on or about March 26, 2005. Comp. 1.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

[5]"D. App. __" refers to a page of the appendix attached to this filing.

DAVID M. COHEN
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7586
Fax: (202) 514-7969

Attorneys for Defendant

December 20, 2006