**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **Northrop Grumman Information Technology, Inc.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 05-595C** |
| **The United States of America** | ) | **Hon. Loren A. Smith, Senior Judge** |
| **Defendant.** | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

### A. Introduction

Defendant's cross-motion turns on the issue of whether the plaintiff, Northrop Grumman Information Technology, Inc. ("NGITI"), is legal successor to Logicon, Inc. In No. 03-23C, plaintiff filed a certified claim and sued in the erroneous belief that a different Northrop Grumman affiliate, Northrop Grumman Computing Systems, Inc. ("NGCSI"), was legal successor to Logicon, Inc.[1] Defendant demonstrated in No. 03-23C that plaintiff was wrong.[2] As a result, the parties agreed to dismiss No. 03-23C without prejudice, and that case was dismissed.[3] Plaintiff then refiled the claim, and, after contracting officer denial, plaintiff brought this suit under the name of NGITI.

[1] The facts are set forth in the accompanying affidavit of Michael Geltner and accompanying exhibits.
[2] Geltner declaration ¶ 4.
[3] Exhibit 2.

Defendant's contention that this suit should be dismissed, because it is filed more than one year after the contracting officer's denial of the original NGCSI claim, turns on the issue of whether NGCSI or NGITI is legal successor to Logicon, Inc. Defendant argues NGCSI is successor.[4] The facts show defendant is wrong; plaintiff finally has it right. As the original claim was not submitted in the proper corporate name, the contracting officer's original decision was a legal nullity and could not start the one year statute of limitations running. Moreover, plaintiff preserved its right to proceed as it has; once plaintiff realized defendant was correct in No. 03-23C in asserting NGCSI was not Logicon's successor, the parties agreed to dismiss without prejudice, and plaintiff made its proposed course of action – refile under NGITI and then sue after proper claim denial – clear.

**B. <u>Facts</u>**

The contractor is Logicon, Inc. App. 85. Logicon, Inc. was formed in 1961 as a California corporation, and, in 1978, a new Logicon, Inc. was formed in Delaware, and the California corporation was merged into it.[5] This was the state of affairs when the contract order in suit was issued October 20, 1999. App. 85 (date of order). On October 12, 2001, in Delaware corporate records, Logicon, Inc. changed its name to NGITI.[6] There is no record of further name change or merger. Therefore, NGITI is legal successor.

**C. <u>Argument</u>**

In No. 03-23C, plaintiff, relying on business, rather than corporate, records, presented NGCSI as successor to Logicon, Inc. Defendant called plaintiff on it, pointing out that only

[4] Defendant's brief at 4.
[5] Geltner decl. ¶¶ 7, 8 and 9; Exhibits 3, 4 and 5.
[6] Geltner decl. ¶ 10; Exhibit 7. A few minutes later, on the same date, a new Logicon, Inc. was formed in Delaware, but it is not in the chain from the original Logicon. Geltner decl. ¶ 11; Exhibit 8.

corporate records and state filings can establish corporate successor status.[7] Defendant was plainly correct.

Logicon, Inc. was a Delaware corporation when the contract was signed.[8] Under Delaware law, a corporation may amend its certificate of incorporation to change its name. Del. Stats., Gen. Corporate Law § 242(a)(1). A simple corporate name change does not make the name-changed corporation a different entity from what it originally was. See Stalvey v. Haveg Industries, Inc., 1994 Del. Super. LEXIS 68 at *10-11 (Del. Superior Ct. 1994). Since NGITI is the same entity as Logicon, Inc., it is the proper party to file claim and sue.

Defendant relies on erroneous statements and certification by Mr. Del Bando. But it is self-evident that corporate status is established by filings in the state of incorporation, not erroneous beliefs or business practices. In Delaware, a corporation can only be formed by filing a certificate of incorporation with the Delaware Department of State Division of Corporations. Del. Stats. Gen. Corporate Law §§ 101(a), 103. The corporation can change its name by corporate action, which is only effective on filing with the state. Id. § 242(c). Proof of corporate action can only be made by presenting a certified copy of state corporate records. F.R. Evid. 902(1) and (4), 1005. See United States v. Combs, 762 F. 2d 1343, 1348 (9th Cir. 1982); Williams v. City of Daytona Beach, 2006 U.S. Dist. LEXIS 5766 at *22-*23 (M.D. Fla. 2006). Plaintiff has done so. Mr. Del Bando's well-meaning errors, based on his knowledge of business, rather than corporate, names, do not negate the only qualified proof. Testimonial evidence of corporate records is admissible to prove their contents only if the actual records are somehow unavailable. F.R. Evid. 1004; Wright v. Farmers Co-op of Arkansas, 681 F. 2d 549 (8th Cir. 1982); King v. Kirkland's Stores, Inc., 2006 U.S. Dist. LEXIS 54796 at *15-*16 (M.D.

---

[7] Geltner decl. ¶¶ 3-4; Exhibit 1 (Defendant's brief in No. 03-23C).
[8] Exhibits 3, 4 and 5.

Ala. 2006) (testimonial evidence of contents of documents limited to unavailability of documents).

## II. PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A. Introduction

Defendant makes two core arguments on the merits, contending first, that it had a right under the contract to discontinue if there was no bona fide need for the software, and, second, that there was no breach of warranty. Plaintiff does not disagree with the first point; defendant did not breach the contract by failing to exercise its renewal option. Indeed, defendant's ability to non-renew is the reason the warranty was crucial to plaintiff. Plaintiff's position in this case is limited to defendant's breach of warranty. If defendant warranted material facts and they were false, defendant has breached the contract and is liable for damages regardless of whether it failed to also breach the contract by failing to exercise renewal options. Defendant asserts three responsive points on breach of warranty: (1) there was no warranty; (2) Mr. Johnson made plaintiff aware that the software was acquired for research and development; and (3) the letter of essential need was true. Plaintiff believes the record establishes that defendant is wrong on each point to such an extent that summary judgment for plaintiff is appropriate.

### B. Relevant Facts

Defendant contends that Mr. Johnson "made clear to both Mr. O'Brien and Mr. Del Bando that the Army was still at the research and development stage and merely hoped that the Omnicast software could be used as an integral part of the ABCS if it proved successful in

testing."[9] Defendant's record reference for this is Mr. Johnson's declaration at ¶ 7. There, Mr. Johnson states:

> In none of my conversations with Mr. O'Brien or any individual from Logicon did I ever assert that the Omnicast software was guaranteed to be used in the ABCS; rather, I made clear to both that we were still at the research and development stage and merely hoped that the Omnicast software could be used as an integral part of the ABCS if it proved successful in its testing.

Mr. Johnson's statements to Mr. O'Brien are, of course, irrelevant to this case, since the record is clear that he was not employed by plaintiff; he was a salesman for Omnicast trying to sell software to plaintiff, and there is no record he ever passed along to Logicon his knowledge that the software was untested by CECOM. Defendant's suggestion that Mr. Johnson told Mr. Del Bando or any other Logicon employee that the software was being acquired for research and development – aside from ***not*** being clearly supported by Mr. Johnson's declaration – is inconsistent with the record.

In his deposition, Mr. Johnson testified that he signed the Letter of Essential Need. App. 49. Asked how the document came about, Mr. Johnson testified as follows:

> A This document came about, I guess, towards the end of discussions. And this came from, I know, it looks like, I don't recognize the name, I don't recognize the name on top, but it was from either Mr. O'Brien or someone at Logicon. And at the time I believe it was stated they needed this in order to proceed forward.
>
> Q Do you know who told you that?
>
> A I would say it was Mr. O'Brien, to the best of my – remember, he was my primary interface.
>
> Q The name on the top, Jondel Bandeau (phonetic), is that the one you said you didn't recognize?
>
> A Yeah, I don't recall that name.
>
> Q Do you recall a Barry Bernstein?

[9] Defendant's Proposed Findings of Uncontroverted Facts ¶ 5, page 2.

A Yes, I do, but much later than this.

Q Did you have any communication, if you remember, in this pre-contracting period with anybody from Logicon?

A Not that I remember by name, not that I can recall.

App. 49-50.

Mr. Del Bando is clear that he never spoke to Mr. Johnson. He said "I would receive it and file it, but I did not work directly with drafting this or anything else."[10]

Mr. Bernstein was the only other Logicon employee involved in the transaction. He was asked about the letter of essential need and described it as follows:[11]

> A. And what the letter of essential need is intended to specify is that the government who acquires the particular product to which the letter of essential need applies represents and warrants to Northrop Grumman that the products are essential to the operation of the entity for the period of which – for the period of time for which the product is being financed or acquired.

Mr. Bernstein testified he never met Mr. Johnson but was on a conference call with him regarding due diligence. App. 201-202. The minutes of that call, which occurred January 28, 2000, some four months after the letter of essential need and after the contract order, are in the record (App. 137-138). They do not list Mr. Johnson as a participant but do state that the Air Force confirmed the essential need. Mr. Bernstein was asked about the Software and research and development:[12]

> Q. Would it refresh you recollection if I suggested that it was being used for research and development?
>
> A. I was – I'm not aware of that.

[10] Del Bando dep. at 23 (excerpt attached to this brief). See also *Id*. at 25 ("Q. So despite your name being on it, you really wouldn't be involved except accepting it after it had been provided by somebody on the staff. A. Accepting it. Make sure it's available in the file to be able to refer to and pull out when needed.").
[11] App. 193.
[12] App. 203.

**C. Argument**

The elements of a cause of action for breach of warranty are:

> "(1) the Government assured the plaintiff of the existence of a fact, (2) the Government intended that plaintiff be relieved of the duty to ascertain the existence of the fact for itself, and (3) the Government's assurance of that fact proved untrue." Kolar, Inc. v. United States, 227 Ct. Cl. 445, 650 F. 2d 256, 258 (Ct. Cl. 1981).

Oman Fischbach Int'l v. Secretary of the Navy, 276 F. 3d 1380, 1384 (Fed. Cir. 2002). On the first element, the Government contends that the reference in the leasing terms and conditions don't clearly incorporate the letter of essential need. However, the language of the leasing terms and conditions clearly cross-reference to it. If the letter of essential need is not referenced, then the leasing terms and conditions, which recite that the Government has supplied "required information relative to the essential use of the software Asset" "as an inducement for Contractor entering into this Agreement," App. 95, is rendered a nullity. There is no other record of information supplied to Logicon but the letter. The due diligence conference call referenced above was ***after*** the contract. In either case, the elements of the breach of warranty cause of action do not require the warranty document to be specifically incorporated in the contract by reference. The use of the "inducement" language makes it clear that the contracting officer knew the Government was making a warranty ***and*** intended that Logicon rely in lieu of making independent inquiry.

Defendant contends that Mr. Johnson told Mr. Del Bando or Logicon that the software was for research and development. However, the stated elements of the breach of warranty cause of action make this irrelevant. Moreover, the record refutes this assertion. Mr. Johnson's

deposition says he has no recollection of talking to Logicon. His declaration, if it says what defendant wants, may contradict this.[13] The Supreme Court has noted that courts

> have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.

Cleveland v. Policy Mg't. Systems Corp., 526 U.S. 795, 803 (1999). Accord, Oney v. Ratiff, 182 F. 3d 893, 896 (Fed. Cir. 1999); Detz v. Greiner Ind., 346 F. 3d 109, 116-120 (3rd Cir. 2003). Mr. Johnson's declaration has no explanation for deviation from his lack of memory about talking to Logicon when he signed the essential need letter. Thus, defendant is stuck with Mr. Johnson's testimony that he has no memory of talking to Logicon. For Logicon's side, the testimony is clear it did not know the software was for research and development. Indeed, the record is also clear that, if Logicon did think so, it would not have entered into the lease contract; its only protection against early discontinuance was to get confirmation that the software was not for research, and, instead, was so integral that the Government would need it for the full lease period. See Bernstein quote, page 6 *supra*.

Finally, defendant contends the letter of essential need could have been true, because there was an essential need for some software and some software was essential, if not this Software. This argument cannot be reconciled with the purpose of the letter, which was to assure Logicon that the software it was buying to lease to the Government was so essential and integral that the Government would be motivated to continue the lease; Logicon's worst fear was that the

---

[13] From the way Mr. Johnson's deposition is written, he also may only be saying he spoke just to Mr. O'Brien about the Software being for research and development, which is consistent with his deposition testimony and the facts.

Government could or would want other software to replace the Starburst Omnicast Software and then discontinue the lease.[14]

## III. <u>CONCLUSION</u>

Plaintiff's Motion for Summary Judgment should be granted and defendant's denied.

Dated: January 17, 2007

Respectfully submitted,

/s/ Michael E. Geltner, Esq.
Michael E. Geltner, Esq.
Geltner & Associates, P.C.
10 E Street, S.E.
Washington, D.C. 20003
T: (202) 547-1136
F: (202) 547-1138

*Attorney for Plaintiff*

[14] Defendant seeks to rely on the *contra proferentum* rule, but "under the rule of *contra proferentum*, the contract is construed against the drafter if the interpretation advanced by the non-drafter is reasonable." <u>Fort Vancouver Plywood Co. v. United States</u>, 860 F. 2d 409, 410 (Fed. Cir. 1988). Aside from failing to establish either who was the drafter or that the letter of essential need was ambiguous (a requirement for the *contra proferentum* rule, *id*.), defendant's proposed interpretation is patently unreasonable.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment was sent this 17th day of January, 2007 by electronic filing transmission to:

J. Reid Prouty, Esq.
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attention: Classification Unit, 8th Floor
1100 L Street, NW
Washington, DC 20530

/s/ Michael E. Geltner, Esq.