IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-595C |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**CROSS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, provides this reply in support of its cross-motion for summary judgment.

LAW AND ARGUMENT

We argued in our earlier-filed "Cross-Motion For Summary Judgment and Opposition To Plaintiff's Motion For Summary Judgment" ("our cross-motion") that judgment should be entered for the Government and denied for plaintiff, Northrop Grumman Information Technology, Inc. ("NGIT"), for three reasons: first, that this lawsuit is barred by the statute of limitations because a claim setting forth the basis of the suit was denied more than a year prior to the filing of this lawsuit; second, that the Army had the contractual right to cancel the lease because its bona fide need for the Omnicast software evaporated when the software turned out to be flawed and Starburst's new parent company declined to provide the further support necessary to remedy those flaws; and, third and finally, that NGIT's motion for summary judgment should be denied because no warranty was incorporated into the contract and NGIT was aware of the purposes and uses to which the software was to be utilized, so the Army would have broken no

warranty in any event. The corporate documents first provided by plaintiff in response to this motion for summary judgment persuade us that our statute of limitations defense (which was based upon the testimony of plaintiff's former employee) is based upon disputed facts, and we withdraw it from our cross-motion. Nevertheless, our two other grounds for summary judgment are not persuasively challenged by plaintiff and compel judgment in our favor.

I. The Army Was Within Its Rights To Discontinue The Lease

As we explained in our cross-motion, the terms of the lease at issue in this case relieved the Army of its obligation to continue performing upon it when, as happened here, the Omnicast software ceased fulfilling a bona fide Army need. NGIT does not dispute this contention and agrees that the Army had the contractual right to withdraw from the lease under the circumstances presented. See Pl. Opp. 4.[1] NGIT thus relies entirely upon its breach of warranty claim for its right to recover in this lawsuit. Id.

II. The Army Breached No Warranty To NGIT

NGIT's entire case rests upon the notion that the "letter of essential need," signed by Mr. Johnson at Logicon's behest, constitutes a warranty and that the alleged breach of that warranty requires the Army to pay damages to it. Pl. Opp. 4. In our cross-motion, we demonstrated that this contention failes because: (1) the letter was not a part of the contract and thus not a warranty; (2) the unambiguous text of the contract made clear that the Army's needs for the software might change; (3) NGIT was given ample information that the use of the Omnicast software was provisional; and, finally, (4) nothing in the "letter of essential need" was

---

[1] "Pl. Opp. __" refers to a page of "Plaintiff's Opposition To Defendant's Cross-Motion For Summary Judgment And Reply To Defendant's Opposition To Plaintiff's Motion For Summary Judgment."

inconsistent with what later transpired. NGIT's reply does not successfully refute these arguments.

A. The Letter Of Essential Need Is Not A Warranty

NGIT rightly recognizes that Mr. Johnson's signature upon the "letter of essential need" is not sufficient to turn it into a warranty because he possessed no contracting authority and that only the contracting officer possessed that authority. Pl. Mot. 9.[2] NGIT thus attempted to assert that the contracting officer incorporated the "letter of essential need" by reference. See id. In our cross-motion, we demonstrated that the cited language in the lease did not meet the requirements for incorporation by reference of the "letter of essential need." NGIT fails to prove otherwise.

NGIT rests its proof of incorporation by reference upon two insufficient grounds: first, that "the language of the leasing terms and conditions clearly cross-reference it." Pl. Opp. 7. Second, that the lease terms would be a "nullity" if they were not referring to the "letter of essential need." Id. Neither argument is persuasive.

As we argued in our cross-motion, incorporation by reference requires far more specificity and clarity than that in the meager terms of the lease here. To be effective, "[i]ncorporation by reference requires a reference in one document to the terms of another. Moreover, the incorporating document must not only refer to the incorporated document, it must bring the terms of the incorporated document into itself as if fully set out." Sucesion J. Serralles, Inc. v. United States, 46 Fed. Cl. 773, 785 (2000) (citations omitted); see also Firth Constr. Co., Inc. v. United States, 36 Fed. Cl. 268, 275 (1996). The lease quite simply does not make

[2] "Pl. Mot__" refers to pages of the "Memorandum Of Plaintiff In Support Of Motion For Summary Judgment" filed earlier in this case.

identifiable reference to the "letter of essential need" nor even indicate that the "information" is a writing as opposed to an oral communication. See App. 95.[3] Moreover, nothing in the lease in any way purports to "bring the terms of the incorporated document into itself as if fully set out." Seralles, 46 Fed. Cl. at 785. As we earlier argued, the contracting officer[4] could not have obligated the Army to an alleged warranty in the "letter of essential need" because the "information" allegedly provided by the Government is so inadequately described and indefinite that the letter and "information" cannot have been incorporated by reference.

NGIT's allegation that failure to incorporate the "letter of essential need" into the lease by reference would create a "nullity," see Pl. Opp. 7, is singularly unpersuasive. NGIT's argument would have the Court replace the rule of law that incorporation by reference requires that contract language meet strict standards. Instead, NGIT would have the Court create an exception to the law for those times when the standards for incorporation by reference are not met, in which case these standards would be relaxed until they rescued indefinite and ambiguous language, which would otherwise be "a nullity." This cannot be the law, and NGIT cites no cases in support of such a self-defeating addition to the law of incorporation by reference. Accordingly, the language of the lease does not adopt the "letter of essential need" and the letter cannot constitute a binding warranty.

B. The Unambiguous Text Of The Lease Provided That The Army's Needs For The Software Could Change

In our cross-motion, we demonstrated that the lease's provisions put NGIT upon notice

[3] "App.__" refers to a page of the appendix following plaintiff's earlier-filed, "Proposed Finding Of Uncontroverted Fact."

[4] It is the contracting officer's actions which are relevant here, for only she had the authority to bind the Government to the alleged warranty, as NGIT concedes. Pl. Mot. 9.

that the Army's needs for the software could change. See App. 95 (Army excused from "all obligations under the lease if the Bona Fide Needs of the Government for the Asset cease to exist."). App. 95. NGIT has not responded to this argument. As we demonstrated earlier, the existence of lease language clearly and directly providing for the possibility that the Army's needs would change completely contradicts and disposes of NGIT's claim that the lease warrants that the Government's needs for the Omnicast software could not or would not change.

### C. Mr. Johnson Accurately Explained The Army's Planned Uses Of The Omnicast Software To NGIT

We earlier argued that, even if the Court were to incorporate a warranty by reference into the lease, it would necessarily include all "information" that the "Government provided." App. 95. Mr. Johnson testified in his declaration that he provided ample "information" to individuals from Starburst and Logicon that the Omnicast software was developmental. Johnson Dec. 7.[5] Although NGIT rightly states the law that an issue of disputed fact may not be raised by simply contradicting prior sworn testimony, see Pl. Opp. 8, Mr. Johnson does not contradict his deposition testimony in the declaration. Instead, the deposition testimony cited by NGIT was that, at the time of the deposition, he did not recall who he spoke with from Logicon during the pre-contract period. See Pl. Opp. 5-6. Mr. Johnson's testimony cited by NGIT was not that he did not speak with individuals from Logicon before the lease, but that he could not remember individuals by name at the time of the deposition or, at most, that, at the time of the deposition, his memory upon the matter was unclear. Id. This is not a contradiction with his declaration which required explanation (indeed, Mr. Johnson did not identify Logicon individuals by name in this portion of his declaration).

[5] "Johnson Dec. __" refers to a paragraph of Mr. Johnson's declaration, earlier filed with "Defendant's Proposed Finding Of Uncontroverted Fact."

Because Mr. Johnson made clear, by the size of the order and all information provided to Logicon, that the software was developmental, any incorporation by reference of Government-provided information, would have put Logicon upon notice that the software was developmental and that the Government's needs could change.

D. The "Letter Of Essential Need" Was Not Inaccurate

Finally, we demonstrated that the "letter of essential need" was accurate. NGIT's response to this argument does not address our examination of the letter's terms, but asserts that this consistent interpretation "cannot be reconciled with the purpose of the letter" and Logicon's "worst fear" as addressed in that letter. Pl. Opp. 8-9.

Regardless of the alleged purpose of the letter relating to Logicon's "worst fear," Pl. Opp. 8, the substance of that fear was not contained in the letter, nor does NGIT provide any proof that such information was conveyed to Mr. Johnson before he signed that letter, much less that the contracting officer would have been aware of such considerations when she allegedly incorporated the "letter of essential need" into the lease by reference. Moreover, there is no real dispute that the letter was drafted by Logicon, not by Mr. Johnson or the Army[6], thus, any ambiguity must be interpreted in favor of the Army. E.g., Metric Constructors, Inc. v. NASA, 169 F.3d 747, 751 (Fed. Cir. 1991) (noting doctrine of contra preferendum). Under this standard, as we demonstrated in our cross-motion, each of the two material sentences in the "letter of essential need" may be easily read to have been accurate.

[6] NGIT attempts to cast some doubt upon the matter in footnote 14 of its reply brief, see Pl. Opp. 9, n.14, but Mr. Johnson testified directly that the "letter of essential need" was provided by Logicon. Johnson Dec. 7.

CONCLUSION

The uncontroverted facts and law in this case demonstrate that the Army's decision to terminate its lease was countenanced by the language of that lease and that the Army breached no warranty. Accordingly, we respectfully request that the Court grant the Government's cross-motion for summary judgement and deny plaintiff's motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7586
Fax: (202) 514-7969

Attorneys for Defendant

February 5, 2007