# In the United States Court of Federal Claims

No. 05-595 C

(Filed: August 14, 2007)

| | |
|---|---|
| **NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC.**<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | Contracts; Summary Judgment, RCFC 56(c); Breach of Warranty; Incorporation by Reference. |

*Michael E. Geltner*, of Geltner & Associates, P.C., Washington, DC, counsel of record for Plaintiff.

*J. Reid Prouty*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, counsel of record for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Donald E. Kinner*, Assistant Director.

## OPINION

**DAMICH**, Chief Judge.

This government contracts case regarding the Government's lease of software from Plaintiff is before the Court on cross-motions for summary judgment. Plaintiff's sole count in its complaint is for breach of contract. Specifically, Plaintiff alleges that the Government breached a warranty that software leased to be utilized in the Army's Battle Command System was "essential" and "integral" to the system. Oral argument was held on May 16, 2007. For the reasons discussed herein, Plaintiff's motion for summary judgment is DENIED and Defendant's cross-motion for summary judgment is GRANTED.

## BACKGROUND[1]

In early 1999, Joseph Johnson, the Chief of the Horizontal Technology Integration Office of the U.S. Army's Communication-Electronics Command ("CECOM") at Fort Monmouth, New Jersey, was contacted by a salesman from Starburst Software, Rick O'Brien, who informed him about one of the software products his company offered called "Omnicast." Pl.'s Resp. to Def.'s Proposed Findings of Uncontroverted Fact ("Pl.'s Resp. to Def.'s FF") ¶ 1. The Omnicast software was a "revolutionary" technological means of sending information to multiple recipients while using less "bandwith" than conventional transmission protocols. *Id.* Mr. Johnson believed that the Omnicast software could be used for the Army Battle Command System ("ABCS") and decided to procure the software to utilize it in the development of the ABCS. *Id.* ¶ 2. To effectuate the procurement, the Army used a pre-existing Air Force I-CASE contract with a third party, Logicon, Inc.,[2] with Starburst acting as Logicon's subcontractor, that enabled the Air Force to lease software pursuant to special offers. *Id.* ¶ 4; *see* App. to Pl.'s Mot. for Summ. J. ("Pl.'s App.") at 184.

Before a lease agreement was executed, Mr. Johnson signed, at Plaintiff's request, a "Letter of Essential Need" (the "Letter") which was drafted by Plaintiff and provides that:

> [the Government] has decided to enter into a lease agreement for the Starburst database products to support ABCS 6.0 and beyond. *The products are essential to the operation of ABCS 6.0 as they are integral to the system.* After considering the alternatives, it was determined that a lease was the most cost-effective means of providing long-term, Program-wide access to the Starburst products.

Pl.'s App. at 84 (emphasis added). On October 20, 1999, pursuant to its latitude under the I-CASE contract, the Air Force entered into a lease agreement (the "Contract") with Plaintiff by issuing Delivery Order 5981. Pl.'s Resp. to Def.'s FF ¶ 6; Pl.'s App. at 85. The Contract incorporated by reference the leasing terms and conditions contained in Plaintiff's Special Offer No. 330, Revision 3 ("Leasing Terms and Conditions"). *Id.* at 86. The Contract provided for a base payment of $100,000 and had three options; the exercise of each option would require a

---

[1] The recitations that follow do not constitute findings of fact by the Court. Rather, the recited factual elements are taken from the parties' filings and are either undisputed or alleged and assumed to be true for the purposes of the pending motions.

[2] On October 12, 2001, Logicon, Inc. changed its name to Northrup Grumman Information Technology, Inc. Pl.'s Opp. to Def.'s Cross-Mot. for Summ. J. and Reply to Def.'s Opp. to Pl.'s Mot. for Summ. J. at 2. Accordingly, Logicon, Inc. hereinafter will be referred to as either "Plaintiff" or "Logicon."

payment to Logicon in the amount of $285,000.[3] Pl.'s App. at 94. Logicon assigned the payments to a financing institution, ePlus Government, Inc. Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 2. The Leasing Terms and Conditions provide as follows:

> It is hereby mutually understood and agreed that as inducement for Contractor entering into this Agreement, the Government has provided required information relative to the essential use of the software Asset which includes, but is not limited to, a description of the currently identified applications to be supported and planned life cycle operations for the leased software. . . . the Government shall be relieved from all obligations under the lease, if the Bona Fide Needs of the Government for the Asset cease to exist and such need is not fulfilled within the succeeding twelve (12) months, from the date of nonrenewal/termination, with another Asset performing similar functions which the leased Asset was intended to perform.

Pl.'s App. at 95.

Plaintiff purchased the software from Starburst and the Government accepted delivery of the software and made its initial lease payment and first option year payment. Tr. of Oral Argument ("Tr. of OA") at 5; Pl.'s Resp. to Def.'s FF ¶ 9. The Government began testing the software in battlefield conditions and discovered significant problems. *Id.* ¶ 10. Starburst was contacted to remedy the problems, but, before they could be resolved, Starburst was acquired by another company–which refused to provide more than one more year of support to the Omnicast software and would not issue any software updates. *Id.* ¶¶ 10-11. Thus, the Army had no further need for the Omnicast software because it was "useless for either research and development or any further use in the ABCS." *Id.* ¶ 12. Accordingly, the Government chose not to renew the lease for the final two years, uninstalled the software, and offered to return the software to Plaintiff. *Id.* ¶¶ 12-13.

Following the denial of its certified claim to the contracting officer ("CO"),[4] Plaintiff filed, on June 3, 2005, a complaint in the Court of Federal Claims alleging breach of contract and

---

[3] More specifically, the Base Period of the Contract was for a lease from 20 Oct 99 through 30 Nov 99. Pl.'s App. at 22. Option Period 1 was for a lease from 1 Dec 99 through 30 Nov 00. *Id.* Option Period 2 was for a lease from 1 Dec 00 through 30 Nov 01. *Id.* Option Period 3 was a purchase option, provided that the Base Period and both Option Periods 1 and 2 had been executed. *Id.*

[4] Northrup Grumman Computing Systems filed, on June 12, 2002, a certified claim to the CO, which was denied on December 10, 2002. Pl.'s Resp. to Def.'s FF ¶¶ 15-16. Northrup Grumman Information Technology submitted, on or about March 26, 2005, a new claim to the CO, alleging essentially the same facts, which was also denied. *See id.* ¶ 17.

seeking $570,000 in unpaid rent under the Contract.[5] Comp. ¶¶ 19-20. Discovery has now been completed and Plaintiff moves for summary judgment alleging that the Government breached a warranty contained in a Letter of Essential Need–which Plaintiff alleges was incorporated into the Contract–because the software provided was not truly "essential" or "integral" to ABCS. Defendant, in opposition, has filed a cross-motion for summary judgment in which it argues that the alleged warranty was not incorporated into the Contract and that, even if it were, it did not breach the alleged warranty.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c) of the Rules of the Court of Federal Claims; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court's function is not to weigh the evidence, but rather to determine whether there is a genuine issue as to a material fact–that is, one that would change the outcome of the litigation. *Id.* at 248-49. A genuine issue exists if the evidence is such that a reasonable [trier of fact] could find for the nonmoving party. *Id.* at 242. The moving party can meet its burden by demonstrating the absence of issues of material fact or by showing the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party makes such a showing, the burden shifts to the non-moving party to present such evidence. *Id.* at 324. The non-moving party must present a foundation for facts sufficient to support a verdict in its favor, with all reasonable inferences resolved in its favor. *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1047 (Fed. Cir. 2000).

### II. Analysis

#### A. Incorporation By Reference

While Plaintiff concedes that Mr. Johnson had no contracting authority to make a warranty, it argues that the CO made a warranty by incorporating the Letter of Essential Need into the Contract by reference. Pl.'s Mot. at 9. The Contract provides, in pertinent part, as follows:

> It is hereby mutually understood and agreed that as inducement for Contractor entering into this Agreement, the Government has provided required information relative to the essential use of the software Asset which includes, but is not limited to, a description of the currently identified applications to be supported and planned life-

---

[5] Because Plaintiff assigned the payments due under the Lease to ePlus Government, Inc., this is a sponsorship action on its behalf. Pl.'s Mot. at 2.

cycle operations for the leased software.

Pl.'s App. at 95. Plaintiff argues that this language incorporates the Letter of Essential Need by reference because the Letter was provided before the Contract and the Government was aware that the Letter was required by Plaintiff to proceed. Pl.'s Mot. at 9. Plaintiff argues that the "has provided" language "obviously relates" to the Letter. *Id.* Moreover, according to Plaintiff, "there is no other record of information supplied to [Plaintiff] but the letter"; hence, a contrary reading would otherwise create a "nullity." Pl.'s Opp. to Def.'s Cross-Mot. for Summ. J. and Reply to Def.'s Opp. to Pl.'s Mot. for Summ. J. ("Pl.'s Opp.") at 7. Finally, Plaintiff contends that the "inducement" language alone made it clear to the CO that the Government was making a warranty and it intended that Plaintiff rely on it. *Id.*

Defendant counters that the language of the Contract is too ambiguous to meet the requirements for incorporation by reference. Def.'s Cross-Mot. for Summ. J. ("Def.'s Cross-Mot.") at 7. The Letter of Essential Need, according to the Government, is not clearly identified by the Contract. *Id.* Indeed, Defendant argues, the Letter merely refers to "information" provided by the Government, but, "information" is "so inadequately described and indefinite that the letter and 'information' cannot have been incorporated by reference." *Id.* Defendant points out, for instance, that the Letter does not even specify whether the "information" was provided in a document or in verbal discussions.[6] *Id.*

Whether and to what extent material has been incorporated by reference into a host document is a question of law. *Cook Biotech, Inc. v. Acell, Inc.,* 460 F.3d 1365, 1376 (Fed. Cir. 2006) (citing *Advanced Display Sys., Inc. v. Kent State University*, 212 F.3d 1272, 1282 (Fed. Cir. 2000)). "Incorporation by reference provides a method for integrating material from various documents into a host document . . . by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein." *Advanced Display Sys., Inc.*, 212 F.3d at 1282 (citations omitted). "To incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents." *Id.* "Under general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997) (citations omitted); *see also Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) ("[i]ncorporation by reference is proper where the underlying contract

---

[6] Defendant points to the language used to incorporate the Leasing Terms and Conditions as illustrative of the level of specificity required when parties intend to incorporate documents into a contract by reference. Def.'s Cross-Mot. at 7. The Leasing Terms and Conditions were incorporated as follows: "The 'LEASING TERMS AND CONDITIONS' to Special Offer # 330 Revision 03 (Attachment 1 of I-CASE Special Offer #330 Revision 03, pages 1-4) were incorporated as Attachment 1 of Annex AT of Attachment 26 of the I-CASE contract in order to facilitate this DO." Pl.'s App. at 86.

makes clear reference to a separate document, the identity of the separate document must be ascertained, and incorporation of the document will not result in surprise or hardship"); *American Dredging Co. v. Plaza Petroleum, Inc.*, 799 F. Supp. 1335 (E.D.N.Y. 1992) ("[i]ncorporation by reference requires that the document to be incorporated be referred to and described in the contract so that the referenced document may be identified beyond doubt"). Incorporation by reference also requires not only that the incorporating document refer to the incorporated document, but that it bring the terms of the incorporated document into itself as if fully set out. *Sucesion J. Serralles, Inc. v. United States*, 46 Fed. Cl. 773, 785 (2000) ("Serralles") (citing *Firth Constr. Co., Inc. v. United States*, 36 Fed. Cl. 268, 275 (1996)).

The Court finds that the Contract does not, as a matter of law, incorporate the Letter of Essential Need by reference for two reasons. First, the Contract fails to clearly identify the Letter of Essential Need and leaves considerable doubt as to what "required information" it references. While the Letter may conceivably fit the contractual description, "information" could also be a reference to oral communication between the parties or to any number of documents that the parties may have exchanged prior to contracting. Moreover, the mere fact that the parties agreed that the "information" was provided "as inducement for Contractor entering into this Agreement," does not satisfy the legal requirements for incorporating the terms of the Letter of Essential Need into the Contract. In *Serralles*, supra, the parties entered into a supply contract that provided that it was "contingent on the execution of a land lease agreement," which was attached to the contract. *Serralles*, 486 Fed. Cl. at 785. The court found that

> [m]aking the peformance of the supply contract contingent on the prior execution of a land lease and attaching a draft copy of the land lease to the contract solicitation certainly establishes the close interrelationship of the two contracts . . . [b]ut it does not satisfy the legal requirements for incorporating the terms of a land lease into the supply contract.

*Id.* at 786. Similarly, in the instant case, the parties' agreement that the information was provided as an inducement demonstrates a relationship between the Contract and the information provided, but fails to meet the standard for incorporation by reference. Indeed, the rule applies to the instant case *a fortiori* because the "contingent on" language in *Serralles* is closer to what is required for incorporation by reference than that of "inducement for" here.

Therefore, on the grounds that the Letter of Essential Need was not incorporated into the Contract as a matter of law, the Court DENIES Plaintiff's motion for summary judgment and GRANTS the Defendant's cross-motion for summary judgment.

**B. Breach of Warranty**

Even if the Letter of Essential Need were incorporated by reference into the Contract, the Defendant would not be liable for breach of warranty. By bringing the Letter into the Contract, Plaintiff must, under the normal rules of construction, reconcile what the Letter says with the rest of the provisions of the Contract.

Contract interpretation is a question of law, which may be decided on summary judgment. *Hughes Communications Galaxy, Inc. v. United States*, 998 F.2d 953, 957 (Fed. Cir. 1993); *see also Blake Constr. Co. v. United States*, 987 F.2d 743, 746 (Fed. Cir. 1993). A contract must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all its parts. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). A well-established principle of contract interpretation in the Federal Circuit is as follows:

> [A]n interpretation which gives a reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, or superfluous; nor should any provision be construed as being in conflict with another unless no other reasonable interpretation is possible.

*Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 979 (Ct. Cl. 1965); *see also United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed. Cir. 1983) (a court interpreting a contract must give reasonable meaning to all parts of the contract and should not render portions of it meaningless).

The parties agree that formal words, such as "warrant" or "guarantee," are not required to create a warranty. *See, e.g., Everett Plywood & Door Corp. v. United States*, 419 F.2d 425, 431 (Ct. Cl. 1969). Plaintiff contends that, under *Kolar, Inc. v. United States*, 650 F.2d 256 (Ct. Cl. 1981) ("Kolar"),[7] the Letter of Essential Need constitutes a warranty and the Government breached that warranty as follows: (1) the Government assured plaintiff of the existence of a fact–that is, that the Starburst software was "essential to the operation of ABCS 6.0" and was "integral to the system"; (2) the Government intended that plaintiff be relieved of its duty to

---

[7] *Kolar* provides that a warranty is breached upon the occurrence of the following:

> (1) the Government assured the plaintiff of the existence of a fact, (2) the Government intended that plaintiff be relieved of the duty to ascertain the existence of the fact for itself, and (3) the Government's assurance of that fact proved untrue.

*Kolar*, 650 F.2d at 258; *see also Oman Fischbach Int'l v. Secretary of the Navy*, 276 F.3d 1380, 1384 (Fed. Cir. 2002).

inquire into the fact–here, the Plaintiff was asking the Government to verify that it would use and pay for the lease of the software for the entire term; and (3) the fact proved to be untrue because there was merely a "potential" that the software would work for the Government's intended purpose, but it "had never been demonstrated, tested or used," and thus was actually neither "essential" nor "integral." Pl.'s Mot. at 9-10. Viewing the Letter in isolation from the rest of the Contract, Plaintiff makes a good case for breach of warranty. However, the "warranty" of the Letter must be construed with the rest of the Contract, including the "Escape Clause" granting the Government the option not to renew the Contract under certain conditions.

Defendant contends that there could be no breach of warranty because the Government had a contractual right to withdraw from the lease as the software ceased to fulfill a bona fide need the Army had. Def.'s Cross-Mot. at 5; *see also* Def.'s Reply in Supp. of its Cross-Mot. for Summ. J. ("Def.'s Reply") at 2-3. The Contract provides that

> the Government shall be relieved from all obligations under the lease, if the Bona Fide Needs of the Government for the Asset cease to exist and such need is not fulfilled within the succeeding twelve (12) months, from the date of non-renewal/termination, with an Asset performing similar functions which the leased Asset was intended to perform.

Pl.'s App. at 95. Defendant argues that this language "completely contradicts and disposes of [Plaintiff's] claim that the lease warrants that the Government's needs for the Omnicast software could not or would not change." Def.'s Reply at 5.

In opposition, Plaintiff concedes that Defendant was entitled not to exercise the renewal option "if there was no bona fide need for the software," but argues that the Government's "ability to non-renew is the reason the warranty was crucial to plaintiff." Pl.'s Opp. at 4. According to Plaintiff, the Government's representation that the software was "essential to the operation of ABCS 6.0 as they are integral to the system" meant that it had been tested and demonstrated to work. Pl.'s Mot. at 10. In other words, the Government's interest in the software was not merely for research and development. Tr. of OA at 19, 23. The Plaintiff's position was elucidated at oral argument:

> We're not saying that the government is guaranteeing to us that they're going to use [the software] over four years. We are saying we asked the government to make as assertion of fact as to the current situation. . . . They had every right to not exercise the renewal option had they not made the representation [in the Letter of Essential Need].

*Id.* at 23, 35. The Government, however, contends that the Letter merely represented that ABCS required *some* software and that there was only the *potential* that the Starburst software would work. Def.'s Cross-Mot. at 9. Thus, contrary to Plaintiff's interpretation, the Government

asserts that its representation in the Letter was consistent with the fact that the software was still in the research and development stage. *See id.* at 8; *see also* Tr. of OA at 28.

The Court finds that only the Government's interpretation of the language in the Letter of Essential Need can be reconciled with the Escape Clause. Counsel for the Plaintiff explained the following at oral argument: "it turned out that [the software] didn't work in a tactical environment. . . . [therefore, the Government] had every right to not exercise the renewal option had they not made the representation . . . ." *Id.* at 35. Indeed, the software did not work; thus, the Government was not required to exercise the renewal options and did not breach a warranty provided for in the Letter. Plaintiff's breach of warranty argument fails because the way it construes the Letter of Essential Need–to mean that the Government was representing that the software was already known to work in ABCS–cannot be reconciled with the Escape Clause to avoid conflict as the latter provides that the Government is entitled to be "relieved from all obligations under the lease" if the software fails to work. The Government's interpretation of the Letter, on the other hand, not only avoids conflict but makes practical sense. Hence, the Letter should be read such that the Government agreed that there was only the potential for the software to work. Accordingly, the Escape Clause served as a means for the Government to get out of the Contract, if, as it turned out, the software failed to work.

The Court therefore finds, as a second ground for denying Plaintiff's motion and granting Defendant's cross-motion, that–even if the Court were to grant, *arguendo*, that the Letter of Essential Need was incorporated into the Contract by reference–there has been no breach of warranty.

## III. Conclusion

Based on the discussion above, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment. The Clerk of the Court is directed to enter judgment for the Defendant.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge